THE WABASH RAILWAY COMPANY

*v.*

GEORGE R. H. HUGHES.

SAME

*v.*

MORRIS SELZ.

1. STATUTES—*of their authentication, under different circumstances.* The constitution has, in terms, provided the mode in which laws shall be authenticated, except in cases where the Governor shall fail to return a bill with his objections, or in case a bill is passed notwithstanding his objections.

2. Where, however, a bill has been passed by both houses of the General Assembly, and presented to the Governor for his action, and he fails to

Syllabus.

approve and sign it, or fails to return it with his objections in ten days (Sundays excepted), if the General Assembly shall be in session, or if not in session, he fails so to return it on the first day of the next meeting of the General Assembly, it is declared to be a law, but the constitution fails to prescribe any mode in which it shall be authenticated.

3. But the fourth section of chapter sixty-two of the Revised Statutes of 1845, which was not abrogated by the new constitution and is still in force, does provide a mode of authentication of a bill which has become a law by reason of not being returned by the Governor on the first day of the meeting of the General Assembly next after the session at which the bill was passed, he having been prevented from returning it at that session by adjournment.

4. And where it is claimed that a bill has become a law by reason of not having been returned in proper time by the Governor, it must be authenticated in the mode prescribed by that statute, or it will not be regarded by the courts.

5. STATUTES—*of the character of evidence upon which a statute must rest.* Courts must have some means of knowing that a bill has become a law; and the knowledge of courts in that regard must be derived from record evidence, alone, furnished at the time, by the law making power. Whether bills have or not become laws can only be known from the evidence which the journals, and the original bills with their indorsements, afford.

6. If, upon an inspection of a bill, it is found to be duly authenticated, and the journals show that it passed both houses by the number of votes required by the constitution, and the ayes and noes are entered upon the journals, courts will, if it be a public law, regard and act upon it as such.

7. But courts can never receive oral proof that a law has been passed, or that any act essential to its validity has been performed.

8. Every thing which the constitution has required to be entered upon the journals in the progress of a bill through the two houses, is essential to its binding force, and must appear from the journals themselves to have been performed.

9. But other acts, required to be done by the two houses, but not required to be spread upon the journals, will be presumed to have been done, when a statute appears in other respects to be regular, unless the contrary appears from the journals themselves.

10. SAME—*presentation of bills to the Governor—of the evidence thereof.* If a bill could be authenticated as a law by the journals alone, it can hardly be doubted that the time of the presentation of a bill to the Governor for his action should appear from the journals; but the court are not prepared to hold that an act of the Legislature can be authenticated in that mode.

11.  However, where an act is properly authenticated, a failure of the journals to show that a bill was thus presented, would not invalidate the law, but it would be presumed the bill had been properly presented to the Governor and acted upon by him, or by the houses, in case of a return of the bill with his objections

WRITS OF ERROR to the Superior Court of Chicago, and to the Recorder's Court of Chicago.

On the 23d day of February, 1865, two actions of assumpsit were instituted in the name of the "Wabash Railway Company," one in the Superior Court of Chicago against Morris Selz, and the other in the Recorder's Court of Chicago, against George R. H. Hughes, to recover upon two certain promissory notes executed by the defendants, respectively, to different payees, and assigned to the plaintiffs.

Judgments were entered, *pro forma*, for the defendants, in both cases.  The plaintiffs thereupon sued out these writs of error.

The questions presented upon these records will appear from a very brief statement, in connection with the cases of *The People &c., ex rel. Harless* v. *The Secretary of State, and The People &c., ex rel. Keys* v. *The Auditor,* reported in 33 Ill. 9.

From the stipulation of the parties it appears the journals of the two houses of the 23d General Assembly were silent after the entries of the 23d and 24th of June, 1863, and contained no further or other entries thereon or on either of them until the 31st day of December, 1864, when there appears upon the Senate journal the following entry :

"SATURDAY, December 31st, 1864.

"In pursuance of the proclamation of His Excellency, Richard Yates, Governor of Illinois, dated on the 10th day ot June, A. D. 1863, proroguing the General Assembly of said State until the 31st day of December, A. D. 1864, the Senate met in the Senate Chamber in the City of Springfield, on said

day, at 12 o'clock, M., Lieut. Gov. Hoffman, the Speaker, being in the chair."

It further appears from that journal that on the same day, a message from the Governor was announced to the Senate by his Private Secretary, as follows :

" Mr. SPEAKER—I am directed by the Governor to return to the Senate a bill for an act to incorporate the Wabash Railway Company, together with the Governor's veto thereof, containing his objections thereto."

Following which was the veto message of the Governor, containing his objections to the bill mentioned.

The journal of the House of Representatives contains a similar entry showing the convening of that body on the same day.

In reference to the presentation of the bill for "An act to incorporate the Wabash Railway Company" to the Governor for his action thereon, the parties stipulated as follows:

And it is further stipulated and agreed that for fifteen years or more it has been the practice of the General Assembly of the State of Illinois in regard to the presentation of bills to the Governor, to present them through the enrolling and engrossing committees of the respective houses, either acting by a member of said committees, or by the enrolling and engrossing clerks of the respective houses, (said committees and clerks of each house attending to the presentation of such bills as originated in their respective houses only,) after as well as before the adjournment without day of the General Assembly by which they were passed, and for the Governor to act upon or withhold action upon bills so presented as in case of bills presented during the continuance of the session. And for fifteen years or more it has been the recognized practice, as to many bills passed on the last days of the sessions, to duly enroll them, after the adjournment without day of the General Assembly by which they were passed, and for the Speakers of the respective houses to sign them after such adjournment

without day, after which they were presented and acted upon, as aforesaid.

That under the practice to present bills after the adjournment of the General Assembly of Illinois without day, bills so presented were sometimes entered on the journals of the last days' session of the respective houses in which such bills originated as having been presented on such last day, although such entry was not true in fact, while at other times, the fact and date of the presentation of bills were not entered upon the journals at all when such presentation took place after the close of the session, and frequently such entry was not made in case of bills presented before the end of the session.

And it is further stipulated and agreed that the rules and joint rules of the Senate and House of Representatives of the General Assembly may be produced and used by either party hereto on the hearing of this cause either in this Court or the Supreme Court, the same as if they were made part of this stipulation and agreement.

That said rules and joint rules were adopted many sessions ago, and have been continued at succeeding sessions of the General Assembly unrepealed unless by the practice of the two houses as herein stated.

That the practice of the General Assembly under the rules aforesaid has been different at different sessions with regard to bills presented before the close of the session, as well as those presented afterwards and has been different at the same session.

That, at some sessions the joint committee on enrolled bills, provided by rule 8, has not been, and at others such committee has been appointed; that sometimes the facts that a bill has been duly enrolled, signed by the Speakers of the respective houses, and laid before the Governor, are all parts of one and the same report, and at other times separate reports have been made, and at other times no report of the due enrollment, and fact and date of presentation have been made at all.

That sometimes the Speakers of the respective houses have

signed bills duly enrolled, before the fact of such due enroll-
ment has been reported, and at others, not.

That said rules and joint rules were formally adopted by the
Twenty-third General Assembly, but said General Assembly
adopted in practice the mode of procedure next stated :

That during no part of the Twenty-third Session of the
General Assembly was any joint committee of two from the
Senate and three from the House of Representatives, appointed
as a standing committee ·to examine enrolled bills, &c., in
accordance with joint rule 8, nor was there any such joint
committee of the number mentioned or otherwise appointed by
the said Twenty-third General Assembly; but that in the
House of Representatives of said General Assembly, the usual
House committee (of nine members) on enrolled and engrossed
bills, as provided for in rule 58 of said House, was appointed ·
by the Speaker of said House; and in the Senate, by resolu-
tion, the usual Senate committee on enrolled bills, in compliance
with Senate rule 41, consisting of three members, was
appointed, which said several committees compared and
examined the bills originating in their respective houses as
enrolled, and corrected errors therein and procured the certifi- .
cate of the Secretary or Clerk and reported them, as in said
rule 8 provided ; but said committee frequently did not report
the fact and date of presentation at all, but sometimes said
committee did report the fact and date of such presentation to
the Governor, and as to bills passed on the last days of the
session, the said committees either themselves or through the
enrolling and engrossing clerks of the respective houses, (the
committees and clerks acting in reference to the bills origina-
ting in their respective houses only) presented them to the
Governor after the termination of the session of the said
Twenty-third General Assembly, according to the practice
hereinbefore set forth, as prevailing for the last fifteen years or
more in that regard, but did not report the fact and day of the
presentation of such bills to the Governor, nor were such fact
and day entered on the journals of either of the houses of said

General Assembly; and as to many bills passed upon the last days of said session, the Speakers of the respective houses signed the same after the termination of such session according to the practice hereinbefore set forth, and then they were presented to the Governor, as aforesaid.

That the said Senate committee on enrolled bills for the Twenty-third General Assembly was composed of Messrs. Moffat, Worcester and Richards, and that the duties of said committee were discharged by the members indifferently, sometimes one and sometimes another performing the same.

And it is further stipulated and agreed that said bill for an act to incorporate the Wabash Railway Company, after it had passed both Houses of the General Assembly, was on the 8th day of June, A. D. 1863, (having passed the House of Representatives on that day,) duly reported to the Senate, and delivered in due course to the enrolling and engrossing clerk of the Senate for enrollment, and was by him duly enrolled, and the enrolled bill was duly delivered as soon as enrolled to Hon. L. E. Worcester, a member of said Senate from the Sixth Senatorial District, and a member of said Senate committee on enrolled bills, acting on behalf of said committee, on the 9th or 10th day of June, A. D. 1863, and the said enrolled bill was by the said Senator, acting on behalf of said committee, examined and carefully compared with the engrossed bill so passed by both Houses, and no errors being discovered in said enrolled bill, and the same being found to have been correctly enrolled, it was reported by said Senator, acting for said committee, with other enrolled bills on the 10th day of June, A. D. 1863, as correctly enrolled, the Secretary of the Senate having previously certified according to the fact, on the margin of said enrolled bill or roll, that it originated in the Senate. The said bill was afterwards signed in the respective Houses, first by the Speaker of the House of Representatives, and then by the Speaker of the Senate as before stated, and was presented to the Governor on the 12th day of June, 1863, by the said committee through the enrolling and the engrossing clerk of the

Senate, thereto directed by the Senator aforesaid, but, as in the case of many bills presented during the Session, and of all bills presented after the termination of the Session, the fact and day of presentation was not entered upon the journals of the two Houses or either of them; but the fact and day of said presentation was duly entered upon said bill by the Governor's private Secretary, and also upon the executive journal, a fair register of the Governor's official acts, kept formerly by the Secretary of State, but at this time and for some years previous, and since by the private Secretary of the Governor, according to recognized practice.

And it is further stipulated and agreed that the said enrolled bill was in possession of said Senator Worcester, acting as aforesaid on behalf of said Senate Committee on Enrolled Bills, from the time it was duly enrolled as aforesaid, until he delivered the same to the Enrolling and Engrossing Clerk of the Senate, on the said 12th day of June, A. D. 1863, to be presented to the Governor, said Senator being obliged to leave Springfield immediately after procuring the signature of the Speaker of the Senate to said bill, as hereinbefore stated.

And it is further stipulated and agreed that the said bill for said act to incorporate the Wabash Railway Company, has not been approved by the Governor, nor returned by him to the Senate, in which it originated, nor has it been returned by said Governor on the first meeting of the General Assembly after the expiration of ten days (Sundays excepted) after it was presented to him as aforesaid, unless the transmission of the same to the alleged meeting of the 23d General Assembly, on the 31st of December, A. D. 1864, as appears by the alleged Senate Journal of that day, constitutes such return.

And it is further stipulated and agreed that the 24th General Assembly met for the first time on the first Monday of January, A. D. 1865, and organized that day with a quorum in each House thereof, and that said bill for said act to incorporate the Wabash Railway Company was not returned to the General Assembly, or either House thereof on that day, with the Gov-

ernor's objections thereto, if any he had, unless the transmission thereof on the 31st day of December, A. D. 1864, may be deemed such a return, but it is further agreed that said bill for said act to incorporate the Wabash Railway Company, together with the said message of the Governor, was after the final adjournment of the said pretended meeting of the Senate on the 31st day of December, A. D. 1864, and on that day delivered to the Secretary of State by the Secretary *pro tempore* of said pretended meeting, and has remained in the custody of said Secretary of State, and not been out of his possession from said 31st day of December, A. D. 1864, until the present time, and is now in possession of said Secretary of State.

And it is further agreed that the persons named in said bill as the corporators, and who, with their associates constitute the Company, plaintiffe in this suit, have, so far as was legally competent for them to do, accepted said bill as an act of incorporation or charter, and opened books for subscription to the capital stock of said supposed Company, and subscribed and received subscriptions to the stock thereof; and that such subscribers have elected officers of said supposed Company, and thereupon have claimed and assumed that said Company was duly organized under said bill as a legally existing corporation, and have claimed and exercised the rights and privileges and franchises in said bill described and enumerated as though the same had become a law; but whether it has or not is a question reserved herein for the court upon the whole case as here presented, and that such acceptance and organization were before the commencement of this suit, and the making of the promises and undertakings in said declaration mentioned.

"It is further stipulated and agreed that upon hearing of this cause, either in this Court or the Supreme Court, the use of the word 'presented' shall not be taken as an admission by the defendant that there was a legal presentation of said bill to the Governor within such time as is contemplated by the Constitution.

"It is further stipulated and agreed that the said plaintiff has requested the Governor of the State of Illinois to authenti-

cate the said bill for an act to incorporate the Wabash Railway Company by causing the fact that it has become a law to be certified thereon by the Secretary of State, according to the provisions of Sections three and four of Chapter sixty-two, of the Revised Statutes, entitled 'Laws,' and the Governor has refused so to authenticate the same, or to direct the Secretary of State what to do in the premises; and further, that the plaintiff has also requested the Secretary of State to authenticate said bill in the manner last aforesaid, but that the said Secretary has likewise refused so to do.

"It is also hereby stipulated and agreed that all objections to each and every of the facts hereinbefore stated and set forth, on the ground of incompetency, or other objections going to their admissibility as evidence, are hereby reserved and may be urged by either party upon hearing, as if the evidence were offered in due course upon trial."

The main questions now presented, are,

1st. Was the bill incorporating the "Wabash Railway Company," presented to the Governor for his approval, within the meaning of the Constitution, or in conformity with legislative practice, so as to be subject to his approval, or veto, or to become a law in case it was not returned with his approval or veto, as prescribed by the Constitution?

2d. Was there a prorogation of the Legislature to the 31st of December, 1864, and if so, was there such a session of the Legislature as authorized the return of the bill to it, with the Executive veto?

And herein, also, the question arises, whether the bill was authenticated in such a manner as that the court could take any judicial notice of it.

Mr. S. B. Gookins, Mr. Melville W. Fuller and Mr. Myron C. Parsons, for the plaintiffs in error.

Mr. C. Beckwith and Mr. Samuel K. Dow, for the defendants in error.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

These cases present some additional questions to those before the court, when they were formerly heard and determined. It is now insisted that inasmuch as the Governor failed to return the bill creating the "Wabash Railway Company" at the meeting of the Legislature, on the first Monday of January, 1865, with his objections, it became a law, and authorizes the incorporators named in the bill, to exercise its franchises. The twenty-first section of the fourth article of our constitution provides, that every bill which shall pass both houses, before it becomes a law shall be presented to the Governor; if he approve he shall sign it; but if not, he shall return it with his objections, to the house in which it originated; and the house is required to enter the objections at large upon their journals, and then proceed to reconsider it. If, after a reconsideration a majority of the members elected shall agree to pass the bill, it shall be sent with the Governor's objections, to the other house, by which it shall likewise be reconsidered; and if approved by a majority of the members elected, it shall become a law, notwithstanding the objections of the Governor. This section likewise provides that if any bill shall not be returned by the Governor within ten days (Sundays excepted) after it shall have been presented to him, the same shall be a law, in like manner as if he had signed it, unless the General Assembly shall, by their adjournment, prevent its return; in which case the bill shall be returned on the first day of the meeting of the General Assembly next after the expiration of the ten days, or become a law.

In the cases of *The People ex rel.* v. *The Secretary of State, and The People ex rel.* v. *The Auditor,* 33 Ill. 9,—we held that by the dispersion of the members of the two houses on the tenth and eleventh of June, the session was terminated, and the effort made to convene, and all that was done by the few members of the two houses on the 23d and 24th of that month,

was extra constitutional and unauthorized. We, in those cases held that the dispersion of the members of the two houses on the 10th and 11th of June, the settlement of their accounts, and the return of the members to their homes, dissolved the session, and operated as an adjournment *sine die.*

Were it conceded that the bill was regularly passed by both branches of the General Assembly, and regularly placed in the hands of the Governor for his approval, and were it also conceded, that the Governor failed to return it on the first day of the next regular session, and that it had thereby become a law, still it is not authenticated. The constitution has, in terms, provided the mode in which laws shall be authenticated, unless in cases where the Governor shall fail to return a bill with his objections, or in case a bill is passed, notwithstanding his objections. The 23d section of article three, provides : "That every bill having passed both houses, shall be signed by the Speakers of their respective houses." And we have seen that the twenty-first section of the fourth article, requires the Governor, after a bill has passed both houses and been presented to him, if he approve, to sign it. When a bill has been thus passed and thus signed, it is authenticated in the usual mode, and courts are then required, without its being pleaded, to take judicial notice of it when it is of a public character.

When, however, a bill has been thus passed and presented to the Governor for his action, and he fails to approve and sign it, or shall fail to return it with his objections, in ten days, (Sundays excepted) if the General Assembly shall be in session, or if not, and he shall fail so to return it on the first day of the next meeting of the General Assembly, it is declared to be a law; but it fails to prescribe any mode in which it shall be authenticated. Courts must have some means of knowing when bills are passed, and they must receive such knowledge through the medium of evidence. This they can only know through record evidence, furnished at the time, and by the departments entrusted with the law-making power. Whether

13—38TH ILL.

bills have or not become laws can only be known from the evidence which the journals and the original bill with its indorsements afford. If, upon an inspection of a bill, it is found to be duly authenticated, and the journals show that it passed both houses by the number of votes required by the constitution, and the ayes and noes are entered upon the journals, courts will, if a public law, regard and act upon it as such.

Courts can never receive oral proof that a law has been adopted, or that any act essential to its validity has been performed. Some acts must appear from the journals, to have been performed, as well as the proper authentication upon the bill, before it can be regarded as a law of the land. Every thing which the constitution has required to be entered upon the journals, in the progress of a bill through the two houses, is essential to its binding force, and must appear from the journals to have been performed. Other acts required to be done by the two houses, but not required to be spread upon the journals, will be presumed to have been done, when a statute appears in other respects to be regular, unless the contrary appears from the journals themselves. *Supervisors* v. *The People*, 25 Ill. 181. Such was the rule adopted in that case and we see no reason for departing from it.

It is urged that it is essential that the journals should show the time when a bill was presented to the Governor for his approval. Such, no doubt, is parliamentary usage, and one of the joint rules of the two houses requires the "committee on enrolled bills" after a bill shall have been signed by the Speakers of both houses, to present it to the Governor for his approval, and also requires the committee to report the day of the presentation to the Governor, which time shall be carefully entered on the journal of each house. If a bill could be authenticated as a law by the journals alone, there could hardly be a doubt that this as well as all other constitutional requirements, should appear from the journals of the two houses. But we are not prepared to hold that an act of the Legislature

can be authenticated in that mode.   We are, however, clearly
of the opinion that when an act is properly authenticated, a
failure of the journals to show that a bill was thus presented
would not invalidate the law, but it would, in such a case, be
presumed that it was properly presented and acted upon by the
Governor, or by the houses, in cases of a return of the bill
with his objections.

Having held in the cases of *The People ex rel.* v. *Hatch* and
*The Same* v. *Dubois*, that by the dispersion of the members of
the two houses on the tenth and eleventh of June, without
previously having come to a resolution fixing a time for their
again coming together, and by their settling their accounts,
receiving certificates of their attendance, and drawing their
pay, and going to their homes, the session was ended and
the Legislature had virtually adjourned *sine die*, and could not
regularly meet except under a proclamation of the Executive.
He was not, therefore, bound to return the bill to the members
who claimed to have been in session on the twenty-third and
twenty-fourth of that month.   The Governor not having con-
vened the Legislature in extra session by proclamation, it
followed that if he regarded the bill regularly presented for
his action, he should have returned it on the first day of the
next meeting of the General Assembly, if he designed to pre-
vent its becoming a law.

In the cases before referred to, it was held that the second,
third and fourth sections of chapter sixty-two of the Revised
Statutes, were in force, notwithstanding the adoption of the
New Constitution.   That their provisions were not repugnant
to that instrument, but were necessary to execute and carry
into full effect its provisions.   And that as the constitution
could not execute all of its provisions, this enactment or some
other was essentially necessary to afford the means of authen-
ticating laws which were adopted in the mode for which they
provide.   The second section of that act declares, that when a
bill shall pass both houses of the General Assembly, and shall
be returned by the council of revision, with objections thereto,

and upon reconsideration, shall pass both houses by the constitutional majority, it shall be authenticated as having become a law, by a certificate thereon to the following effect: "This bill having been returned by the council of revision with objections thereto, and after reconsideration, having passed both houses by the constitutional majority, it has become a law this —— day of——," which being signed by the Speakers of the Senate and House of Representatives, respectively, shall be deemed a sufficient authentication thereof; whereupon the bill shall be presented to the Governor to be deposited by him with the laws in the office of the Secretary of State. There is no claim that the bill in question can fall within the provisions of this section.

The third section declares that every bill which shall have passed both Houses of the General Assembly and shall not be returned by the council of revision within ten days, having thereby become a law, shall be authenticated by the Governor causing the fact to be certified thereon, by the Secretary of State in the following form:

"This bill having remained with the council of revision ten days, (Sundays excepted) and the General Assembly being in session, it has become a law this——day of——.

C. F., *Secretary of State.*"

We have seen that this bill is not embraced in this section.

The fourth section of the same chapter declares that when the General Assembly shall, by adjournment before the expiration of ten days after the passage of a bill, render the return of such bill by the council of revision impracticable within the time, and the same shall not be returned on the first day of the next meeting of the General Assembly, and shall thereby become a law, the act shall be authenticated in the manner provided in the preceding section. We, in the cases above referred to, hold that under our present Constitution, the Governor acts as the council of revision; and if so, and if these sections are, as we suppose, in force, those bills not authenticated by the approval of the Governor, and which have become

laws in either of the other modes, must be authenticated as required by this law.

Conceding that the bill was regularly passed by both Houses, and was regularly presented to the Governor for approval, and the journals of the session of 1865 failed to show that the bill was returned with the Governor's objections, on the first day of that session, still the bill is not authenticated in the manner required by the fourth section of chapter sixty-two. In such a case we can only take notice of, and act upon, laws thus authenticated. The law has prescribed this mode of authenticating acts, and we can not regard any bill as a law unless it is authenticated by the Governor's approval, or as required by the second, third or fourth sections of chapter sixty-two, as the case may be. If the Governor were, under either of these sections, persistently to refuse to perform his duty, by refusing to cause a bill which had thus become a law, to be authenticated, we are at a loss to perceive how we could take judicial notice of its passage. But the facts of this case do not require the discussion or decision of that question, and we therefore express no opinion, but shall endeavor, should the question ever arise, to meet and determine it.

Having discussed all of the questions which this record seems to present, and being clearly of the opinion that if the bill in question has become a law, we have no legal evidence of the fact, and can not, therefore, judicially notice it, and that in the absence of such evidence of the enactment, plaintiff in error could not show its legal existence, and could not, therefore, maintain these actions, and the judgments of the court below must be affirmed.

*Judgments affirmed.*