W. E. NEIBERGER, Appellant, *vs.* J. S. McCULLOUGH, Auditor, *et al.* Appellees.

*Opinion filed February 23, 1912.*

1. CONSTITUTIONAL LAW—*question of the existence of a law is a judicial one.* No bill can become a law except in the mode prescribed by the constitution, and the power and duty to decide whether a bill has become a law reside in the courts.

2. SAME—*constitution is a grant of general legislative power.* The Federal constitution is a grant of legislative power over enumerated subjects, but the Illinois constitution is a grant of general legislative power to the General Assembly, to be exercised conformably to its provisions.

3. SAME—*constitution is the measure of the powers granted to the different departments of government.* The constitution of Illinois expresses the will of the people in their sovereign capacity and is the measure of the powers committed to the legislative, executive and judicial departments, each of which, in its appointed sphere, exercises that portion of the soverignty delegated to it.

4. SAME—*when a contemporaneous construction will be disregarded.* Where a constitutional provision is doubtful and there is need of interpretation, the practical exposition of it by departments of government called upon to act under it, acquiesced in by the people for a considerable period of time, raises the presumption that such practical exposition is correct and it will generally be adopted by the courts; but if a constitutional provision is not doubtful, a construction contrary to its terms, for any period of time, will be disregarded.

5. SAME—*journal of either house is competent to show that an act was not passed.* In Illinois it is competent to show by the journal of either branch of the General Assembly that an act was not passed in the mode prescribed by the constitution.

6. SAME—*facts required to be set forth in journal must appear there.* The steps in the passage of a bill which are required to be entered in the journal of each house must affirmatively appear by the journal to have been taken or the conclusion is that they were not taken, and it cannot be presumed, from the mere silence of the journal, that they were taken. (*Supervisors of Schuyler County v. People,* 25 Ill. 181, disapproved.)

7. SAME—*taking of vote is not the only step required to be entered on the journal.* The express provision of the constitution for the entry of the ayes and noes on the journal on the final pas-

sage of a bill does not carry with it the implication that the other steps in the passage of the bill need not be entered therein.

8. SAME—*the journal must show that bill, and all amendments thereto, were printed.* The requirement of the constitution that a bill, and all amendments thereto, shall be printed before a vote is taken on its final passage is one which the journal must show was complied with; and such provision applies to amendments made by either house after the passage of a bill by the other or to amendments made by a conference committee.

CARTER, C. J., and DUNN, J., dissenting.

APPEAL from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

ASHCRAFT & ASHCRAFT, and GILLESPIE & FITZGERALD, (EDWIN M. ASHCRAFT, of counsel,) for appellant.

W. H. STEAD, Attorney General, THOMAS E. DEMPCY, and CHARLES E. WOODWARD, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The circuit court of Sangamon county sustained the demurrer of the Auditor of Public Accounts, the State Treasurer and the Board of Trustees of the University of Illinois, appellees, to the bill of W. E. Neiberger, a taxpayer of McLean county, appellant, which asked the court to enjoin the Auditor from issuing his warrant for the amounts mentioned in sections 2 and 6 of the act entitled "An act making appropriations for the maintenance and extension of the various departments of the University of Illinois," (Laws of 1911, p. 39,) and enjoining the Treasurer from paying such warrant and the board of trustees from receiving said amounts.

The bill alleged, and the demurrer admitted, the following facts: The journals of the house of representatives and senate showed that a bill was introduced in the house and passed containing section 2, appropriating $100,000

per annum for the maintenance and extension of the college of medicine of the university, and section 6, appropriating $60,000 annually for the agricultural experiment station; that the bill was reported to the senate and referred to the committee on appropriations, which reported it back with ten amendments, one of which struck out section 2 entirely; that section 6 remained as it passed the house, and the bill as amended passed the senate in that form; that the house refused to concur in the amendments, and a conference committee was appointed which reported recommending that the house concur in certain amendments and section 2 be restored but appropriating only $60,000, and that section 6 be amended by striking out $60,-000 and inserting in lieu thereof $65,000, and that in both house and senate the question was submitted, "Shall the report of the conference committee be adopted?" and it was decided in the affirmative on an aye and nay vote entered in the journals. It did not appear from the journals that either of the amendments reported by the conference committee was ever printed, and they did not show any vote on the passage of the bill as amended, other than as above stated.

The general question submitted is whether a bill becomes a law where the journals of the house and senate do not show a compliance with the requirements of the constitution respecting the passage of bills, and the question in this particular case is whether the bill became a law although it did not appear from the journal of either house that it was printed with its amendments, in its final form, before its passage. The Attorney General, not conceding that his admissions are decisive of the controversy, admits by his brief and argument, and admitted in the argument at the bar, that the constitutional provisions with reference to the passage of bills are mandatory; that it is competent to go behind the printed statute and enrolled act and show by the journal of either branch of the General Assembly that the

act was not passed in the mode prescribed by the constitution; that the journals must show on their face a compliance with every requirement of the constitution, from the introduction of a bill until its final passage, or it will not become a law, and that the silence of the journals as to any required step is evidence of its non-existence. The admissions of the Attorney General as to these questions of law are conclusive in this case and we might well omit further reference to them, but as they are of public importance and may affect the validity of other laws, it is deemed best to re-state the decisions of this court to some extent and the grounds upon which they rested.

Courts have differed as to whether it is competent to show by the journals of the legislature that a bill which has been enrolled, authenticated and deposited with the Secretary of State was not passed in compliance with the provisions of the constitution, and there have also been different views as to presumptions when the journals are admitted as evidence. A very full and accurate summary of the decisions on the subject will be found in the note to *Palatine Ins. Co.* v. *Northern Pacific Railway Co.* 9 Ann. Cas. 579. In the Supreme Court of the United States, and in a number of the States, the rule prevails that the journals cannot be used as evidence for the purpose of impeaching the act. Frequently the English rule respecting acts of parliament is referred to, and various courts holding the same doctrine have based their decisions on the grounds that the requirement for keeping a journal is to furnish information to the public and not to provide evidence of legislative proceedings; that the signatures of the presiding officers and of the Governor constitute a conclusive finding that the act has been passed in conformity to the constitution; that public policy requires that the validity of acts so signed and enrolled shall not be questioned, and that the journals of legislatures are so badly kept that they ought not to be relied upon as evidence of what was done or not done. None

of these reasons have prevailed in this court, and in *Field v. Clark,* 143 U. S. 649, where the Supreme Court of the United States established its rule, it was stated that the rule is different in this State. The rule in England, where there is no written constitution, could not influence the question, and holding that public policy does not require citizens to know the contents of legislative journals is not exactly consistent with the proposition that the journals are intended to provide information for the public. We have no provision that the Governor shall inquire into the proceedings of the General Assembly or learn from other sources of information than the journals that a bill was read, printed or passed. The only duty enjoined upon him is that when a bill shall be presented to him he shall approve it or return it with his objections. Courts have been quite indulgent as to the manner of keeping records with minor local boards or official bodies, which are necessarily chosen from the inexperienced and unskilled in such matters, but if the records of a body selected to make laws are to be looked upon with the same lenity, the courts have not gone so far as to presume that things were done which can not be inferred from the record to have been done. ·

The question involved first came before this court in *Spangler* v. *Jacoby,* 14 Ill. 297, which was decided in 1853, and the court there established two rules: First, that it was competent to show by the journal of either branch of the General Assembly that an act was not passed in the mode prescribed by the constitution; and second, that if facts were not set forth in the journals the conclusion was that they did not transpire. The case was decided under the constitution of 1848, and section 21 of article 3 contained this provision: "And on the final passage of all bills the vote shall be by ayes and noes, and shall be entered on the journal." Section 23 provided that every bill should be read on three different days in each house, unless the rule was dispensed with. The validity of an act was dis-

puted on the ground that the journal of the house did not show that the bill had been read the third time or the ayes and noes called on its passage. The court said that it was clearly competent to show by the journals of either branch of the legislature that a particular act was not passed in the mode prescribed by the constitution and thus defeat its operation altogether; that the constitution required each house to keep a journal, and declared that certain facts made essential to the passage of the law should be stated therein; that the journal was made up under the immediate direction of the house and was presumed to contain a full and complete history of its proceedings, and that if those facts were not set forth the conclusion was that they did not transpire.

In *Turley* v. *County of Logan,* 17 Ill. 151, an act for the removal of a county seat was questioned on the ground that it had not been read three several days nor such readings dispensed with, as required by the constitution. The court said that the provision of our constitution could no more be disregarded than any other provision in it restrictive of legislative power, but the act was held valid because the journals had been amended so as to show the readings.

In *Prescott* v. *Board of Trustees of Illinois and Michigan Canal,* 19 Ill. 324, it was again held that the court would look behind the printed statute to the journal to ascertain whether an act had a legal existence, and that a section of the public act which the journal showed was stricken out in the house formed no part of the bill, and the remainder of the bill had no vitality as the journal did not show that when amended it received the constitutional action of the senate.

In *Supervisors of Schuyler County* v. *People,* 25 Ill. 181, it was objected that the senate journal did not show that a bill was read three times. The court said, that while the constitution contained the requirement it did not say that the readings should be entered on the journal, and held

that where the constitution was silent as to whether a particular act to be performed should be so entered, it was left to the discretion of either house to enter it or not, and the court would presume that it was done unless the journal affirmatively showed the contrary. The decision was upon two grounds: First, that the requirement was merely directory, and might be complied with or not, at the discretion of either house; and second, that it would be presumed that the act was done unless the journal affirmatively showed that it was not. The first proposition has never found favor in any other case in this court, and the second is not in accord with the earlier or later decisions. The case was referred to in *Wabash Railway Co. v. Hughes and Selz,* 38 Ill. 174, but the same question was not involved in the later case. In that case the Governor had returned to the senate a bill with his veto, and the question in dispute was whether the Governor had retained the bill longer than permitted by the constitution after its presentation to him. Bills were presented to the Governor through a member of the enrolling or engrossing committee of the house finally passing the bill or by the enrolling or engrossing clerk, and it was an act to be performed after the passage of the bill. The provision was not in the article relating to the legislative department but in the article concerning the executive, and the time when he received the bill and how long he retained it was necessarily to be determined by his records or evidence. It was held that everything which the constitution required to be entered upon the journals in the progress of the bill through the two houses was essential to its binding force and must appear from the journals themselves to have been performed, but other acts required to be done but not required to be spread upon the journals would be presumed to have been done unless the contrary appeared from the journals themselves. As the presentation to the Governor was after the final passage of the bill it was not a step taken in its

passage through the General Assembly, and it would be the
height of absurdity to say that if the journal did not show
that a bill was presented to the Governor at all, there would
not only be a presumption that it was presented, but also
of the time when the act was done.   What the court de-
cided was, that it was not necessary to enter in the journal
an act of a clerk or member of a committee after a bill
had been regularly passed.   The decision in that case was
interpreted in *Chicago Telephone Co.* v. *Northwestern Tele-
phone Co.* 199 Ill. 324, as meaning that where the journal
is silent as to whether any requirement of the constitution
in the passage of a bill has been complied with the silence
of the journal is accepted as evidence of non-compliance,
but where the constitution does not require a fact to be
recorded and it can be inferred from the recital upon the
journal that the fact existed or the step was taken, then
the presumption will be that the fact did exist or the step
was taken in order to sustain the validity of the law, where
the contrary does not appear from the journal itself.

In *People* v.  *Starne,* 35 Ill. 121, the general Appropri-
ation act, providing for the ordinary and contingent ex-
penses of the government, was held not to be a law because
it did not appear from the journal of the house to have
been read or that any vote was taken upon either reading
or passage, and the court cited and quoted from many cases
holding that doctrine.

In *Ryan* v. *Lynch,* 68 Ill. 160, a certificate of the Sec-
retary of State purporting to give full and true copies of
the journals of the senate and house relating to the passage
of a bill was in evidence and did not show that the bill
was read three times on three different days nor passed on
a vote of the ayes and noes, as required by the constitution,
and the court said that the bill never became a law and was
as completely a nullity as if it had been the act or declara-
tion of an unauthorized assemblage of individuals.

In *Larrison* v. *Peoria, Atlanta and Decatur Railroad Co.* 77 Ill. 11, an attempt was made to show that there were two bills pending of the same number; that one was regularly introduced, twice read and referred to a committee, but that a member of the committee reported back another bill of the same number, which was read but once before its passage. The court held that if there were two bills the act was void, but that there was not the slightest doubt that there was but one bill and that the constitution was satisfied.

In *Burritt* v. *Commissioners of State Contracts,* 120 Ill. 322, the court, reciting the provisions for reading the bill three times and printing it, and the other requirements of the present constitution, said that these various provisions giving the form and mode by which valid and binding laws are enacted are in the highest sense mandatory.

In *Illinois Central Railroad Co.* v. *People,* 143 Ill. 434, the court declared it to be a settled law of this State that the journal of either branch of the General Assembly may be resorted to for the purpose of overcoming the *prima facie* evidence furnished by the signatures of the speakers and the approval of the Governor.

In *People* v. *Knopf,* 198 Ill. 340, the court again stated the rule that if the facts essential to the passage of a law are not set forth in the journal the conclusion is that they did not transpire, and if the journal fails to show that an act was passed in the mode prescribed by the constitution the act must fail.

In *People* v. *Bowman,* 247 Ill. 276, the court reiterated the statement that the journals of the senate and house must show on their face a compliance with every requirement of the constitution, from the introduction of a bill until its final passage, or it will not become a law, and that the silence of the journals as to anything required to be shown is evidence of its non-existence. That is the last expression of the court as to the law, and the cases of

*Spangler* v. *Jacoby, People* v. *Starne* and *Ryan* v. *Lynch* were cited and endorsed. The court there said: "If the journal fails to show anything which, if it had occurred, should have appeared on the journal, the failure to show it is evidence that it did not occur." In *Spangler* v. *Jacoby* the court said that the journal of each house is presumed to contain a full and complete history of its proceedings, and as the journal does not show the printing of the bill the presumption is that it did not occur. The only departure from that rule was in *Supervisors of Schuyler County* v. *People,* which was never afterward followed but was overruled in numerous subsequent decisions.

We do not regard the express provision for the entry of the ayes and noes on the final passage of the bill as carrying with it the slightest implication that other matters need not be entered. The constitution of 1818 provided that each house should keep a journal of its proceedings and publish the same, and that the ayes and noes of the members on any question should at the desire of any two of them be entered in the journal. That was a privilege given to members which could have had no object except to fix responsibility for votes. The constitution of 1848 contained the same provision for the entry of the ayes and noes on any question at the desire of two members, but made it compulsory that on the final passage of all bills the vote should be by ayes and noes and should be entered on the journal. The provision was included in the present constitution for the same evident purpose of fixing the responsibility of members of the General Assembly and compelling them to go on record when voting for or against bills.

The provision for printing bills was introduced in the present constitution as a new requirement, and is, that a bill, and all amendments thereto, shall be printed before the vote is taken on its final passage. When proposed in the constitutional convention it caused much debate, and its

object is made plain by the views of those who advocated it and which caused its adoption. It was advocated by Mr. Allen, Mr. Tincher, Mr. Church and Mr. Medill, and their reasons were, that the General Assembly could not act understandingly upon any bill until it was printed; that the provision would prevent advantage being taken of members and they would know upon what they were voting; that it would prevent amendments which could be seen in manuscript, only, and at the clerk's desk, and that a bill, after all amendments had been made, ought to be printed and laid upon the members' tables so that they might examine it. Mr. Tincher said that the reason for the provision was obvious and that there was not a single provision in the legislative report more important than that one, and Mr. Medill recalled an act which illustrated the danger of not having amendments printed. In the address to the people submitting the constitution for adoption the convention said: "To afford security against hasty and vicious legislation we have required all bills and amendments thereto to be printed before they are passed." The convention regarded the requirement as very important, and, as we think, with good reason.

A question as to the existence of a law is a judicial one, and it is for the courts to determine whether there is such a law or not. (*Duncan* v. *McCall,* 139 U. S. 449.) It is often said that the constitution is a limitation upon the power of the General Assembly; and that is true in the sense that the constitution grants general legislative authority to the General Assembly, which is only restrained or limited by the provisions and limitations contained in the instrument. While the Federal constitution is a grant of legislative power over enumerated subjects, our constitution is a grant of general legislative power to the General Assembly, to be exercised conformably to its provisions. Without the constitution, with its provisions for the two houses, for the number of members, the division into dis-

tricts, the election of members and the grant of legislative authority there could be neither General Assembly nor legislation by such a body. The constitution expresses the will of the people in their original and sovereign capacity and is the measure of the powers committed to different departments. The sovereignty remains with the people, and the legislative, executive and judicial departments, each in its appointed sphere, exercises that portion of the sovereignty delegated to it. Each department must exercise such delegated powers in the mode and by the means prescribed by the constitution, and any act by either not conformable to its provisions will be void. No bill can become a law except in the mode prescribed by the constitution, and the power and duty to decide whether a bill has become a law reside in the courts.

The propositions contended for by the Attorney General are, that although the requirements of the constitution are mandatory, the practical construction of such requirements by the legislative department should prevail; that as a matter of fact the General Assembly has construed the constitution ever since its adoption, in 1870, as not requiring the printing of amendments adopted by conference committees, and that, regardless of the weight to be given to legislative construction, the construction as adopted is correct. It is true that where a constitutional provision is doubtful and there is need of interpretation, the practical exposition of it by departments of government called upon to act under it, acquiesced in by the people, especially for a considerable period of time, raises a strong presumption that it is correct and will generally be adopted by the courts. (*Nye* v. *Foreman,* 215 Ill. 285; *People* v. *Olson,* 245 id. 288; *Cook County* v. *Healy,* 222 id. 310.) Where, however, the language of the constitution is not ambiguous it is not permissible to interpret it differently from its plain meaning, and a construction contrary to its terms, for any

period of time, will be disregarded. In this case there is not the slightest ambiguity in the provision that a bill, and all amendments to it, shall be printed before it is put upon its final passage. No words or form of expression could make the provision more plain, and it can make no difference if the fact is, as asserted, that it has been disregarded by General Assemblies which were charged with the duty to comply with it.

It is contended that the legislative construction is correct on the ground that the final passage of a bill referred to means its passage in the house or senate, regardless of amendments to it subsequently made. The argument is, that when a bill is introduced, read three times, printed, and put upon its passage in either house, the constitution is complied with, although it may be subsequently amended in the other house or by a conference committee, and be afterward passed in a different form and with different provisions. The words, in their natural and ordinary meaning, refer to the last act of the house or senate in passing a bill and enacting it in a law, and there are obvious reasons for rejecting the argument. The final passage of a bill cannot mean one thing where the vote is required to be by yeas and nays, (which is the language of the present constitution,) and a different thing where it is required to be printed before the vote is taken on the final passage, and if the interpretation contended for is correct, the provision for the yeas and nays on the final passage of the bill would apply only to the first passage, and not to the passage of the bill as it becomes a law. If that were so, a bill changed and amended by the report of a conference committee might become a law by the vote of the majority of a quorum, and, of course, that idea could not be entertained for a moment.

The decree is reversed and the cause is remanded to the circuit court, with directions to overrule the demurrer.

*Reversed and remanded, with directions.*

Mr. CHIEF JUSTICE CARTER, dissenting:

Assuming that the admissions of the Attorney General in his brief and argument must be regarded as controlling the decision of this particular case, yet the majority opinion goes beyond this particular case and lays down a rule for the government of other cases with which I cannot agree. I concur in that portion of the opinion which holds that amendments proposed by conference committees are required to be printed the same as other amendments, but I do not believe that under the constitution and the decisions of this court, if the journals fail to state that the report of the conference committee was printed, the court must conclude that it was not printed before the final vote was taken.

As stated in the majority opinion, there is a great diversity of judicial holdings as to whether the legislative journals may be looked into for the purpose of impeaching the validity of an enactment which is valid on its face. In many jurisdictions it has been held that when a bill has been properly engrossed, enrolled and filed with the Secretary of State it is not competent to show by the journal of either house of the legislature that such act was not regularly passed in the form in which enrolled. This has always been the holding by the English courts, but as that country has no written constitution such holdings are not even persuasive in this case. In a large number of jurisdictions, including Illinois, the courts have held that an enrolled bill is only *prima facie* evidence that it has passed the legislature, and if it is alleged that the legislature has failed to comply substantially with any constitutional requirement in the passage of the bill the journals may be introduced to support such contention. (See authorities in note to *Palatine Ins. Co.* v. *Northern Pacific Railway Co.* 9 Ann. Cas. 579.) The United States courts have held that such an enrolled act cannot be impeached by resort to the journal, and the State courts are about equally divided on the question. (1 Lewis' Sutherland on Stat.

Const.—2d ed.—sec. 44.) The current of judicial decisions during recent years (undoubtedly owing to the decision of the Federal Supreme Court in *Field* v. *Clark,* 143 U. S. 649,) has been against the right of the courts to go back of the enrolled act to impeach it by the journal.

Sections 12 and 13 of article 4 of the constitution read, so far as here relevant:

"Sec. 12. Bills may originate in either house, but may be altered, amended or rejected by the other; and on the final passage of all bills, the vote shall be by yeas and nays, upon each bill separately, and shall be entered upon the journal.

"Sec. 13. Every bill shall be read at large on three different days, in each house; and the bill and all amendments thereto shall be printed before the vote is taken on its final passage."

In addition to these provisions the following must be kept in mind from section 10 of article 4 of the constitution: "Each house shall keep a journal of its proceedings, which shall be published. In the senate at the request of two members, and in the house at the request of five members, the yeas and nays shall be taken on any question, and entered upon the journal. Any two members of either house shall have liberty to dissent * * * and have the reasons of their dissent entered upon the journals."

The practice is for each house in a legislative body to keep a journal of its legislative proceedings, of which the courts take judicial notice. "If it should appear from these journals that any act did not receive the requisite majority, or that in respect to it the legislature did not follow any requirement of the constitution, or that in any other respect the act was not constitutionally adopted, the courts may act upon this evidence and adjudge the statute void. But whenever it is acting in the apparent performance of legal functions, every reasonable presumption is to be made in favor of the action of a legislative body. It will not be

presumed in any case, from the mere silence of the journals, that either house has exceeded its authority or disregarded a constitutional requirement in the passage of legislative acts unless where the constitution has expressly required the journals to show the action taken, as, for instance, where it requires the yeas and nays to be entered." (Cooley's Const. Lim.—7th ed.—193-195.) The rule on this question so laid down by this learned author is supported by the great weight of authority. Where the particulars of compliance with the constitution are not specifically required to be entered on the journals such compliance will be presumed, in the absence of express proof to the contrary. The silence of the journals will not be accepted as proof that a proceeding required and not found recorded was omitted, but if the constitution requires a certain proceeding in the process of legislation to be entered on the journals such an entry is necessary to the validity of the act. It must then affirmatively appear by the journals that such constitutional requirement has been complied with. Lewis' Sutherland on Stat. Const. (2d ed.) secs. 51-53; Black on Const. Law, (1895) sec. 106; 26 Am. & Eng. Ency. of Law, (2d ed.) 541, and cases cited; 36 Cyc. 957, and cases cited.

It is held by the majority opinion that this court has not followed the rule as thus laid down, but has decided that each requirement of the constitution as to the enactment of laws would be presumed not to have been followed if the journals did not affirmatively show that it had been. The earliest case bearing on this question in this court was *Spangler* v. *Jacoby,* 14 Ill. 297. It was stated there: "It is clearly competent to show from the journals of either branch of the legislature that a particular act was not passed in a mode prescribed by the constitution, and thus defeat its operation altogether. The constitution requires each house to keep a journal, and declares that certain facts made essential to the passage of a law shall be stated there-

in. If those facts are not set forth the conclusion is that they did not transpire." It will be noted that this case refers to matters which the constitution then, as now, declared shall be recorded in the journal,—in that case the passage by yeas and nays.

In *Turley* v. *County of Logan,* 17 Ill. 151, the opinion, among other things, states: "The journals should show the readings and the passage of the law by a constitutional vote." The language thus used was not necessary for the decision, and the court sustained the act upon the ground that the same legislature subsequently amended the journal to show (as correctly shown by the original minutes of the clerk) that the bill had been read three times.

In *Schuyler County* v. *People,* 25 Ill. 163, it was objected that the senate journal did not show that the act was read three times in that body before it was put upon its final passage. The court said: "The constitution does require that every bill shall be read three times, * * * but the constitution does not say that these several readings shall be entered on the journals. Some acts performed in the passage of laws are required by the constitution to be entered on the journals in order to make them valid, and among these are the entries of the ayes and noes on the final passage of every bill, and we held in the case of *Spangler* v. *Jacoby* that where the journal did not so show this the act never became a law. But where the constitution is silent as to whether a particular act which is required to be performed shall be entered on the journals it is then left to the discretion of either house to enter it or not, and the silence of the journal on the subject ought not to be held to afford evidence that the act was not done. In such a case we must presume it was done, unless the journal affirmatively shows that it was not done." This holding conforms in all respects to the general rule as laid down by Cooley, Sutherland, Black and other authorities heretofore cited.

It is held by the majority opinion that the case of *Schuyler County* v. *People, supra,* is not in accord with the other decisions of this court. With this holding I can not agree. In *People* v. *Starne,* 35 Ill. 121, it was held that as the house journal did not show that the bill in question was ever put upon its passage or that the yeas and nays were called and spread upon the journal the act was invalid. The court said (p. 136): "According to the theory of our legislation, when a bill has become a law there must be record evidence of every material requirement, from its introduction until it becomes a law. And this evidence is found upon the journals of the two houses." This and other statements in the opinion fairly support the contention that all the mandatory provisions of the constitution should be shown affirmatively by the journals. It seems clear, however, that the court did not intend to overrule *Schuyler County* v. *People, supra,* for in commenting on that case it said (p. 142): "It is there held that although the journals failed to show that the bill was read three several times in each house, the constitution not requiring that fact to be recorded the law would not for that reason be invalid. But it was there said, in accordance with the rule in the case of *Spangler* v. *Jacoby,* that under the constitution it was requisite to the validity of an act that the ayes and noes should appear upon the journals." Moreover, the judge who wrote the opinion in the *Starne case* afterward wrote the opinion in *Wabash Railway Co.* v. *Hughes,* 38 Ill. 174, where, in discussing whether it was essential that the journals should show the time when the bill was presented to the Governor, the court said (p. 186): "Some acts must appear from the journals to have been performed, as well as the proper authentication upon the bill, before it can be regarded as a law of the land. Everything which the constitution has required to be entered upon the journals in the progress of a bill through the two houses is essential to its binding force and must

appear from the journals to have been performed. Other acts required to be done by the two houses but not required to be spread upon the journals will be presumed to have been done when a statute appears in other respects to be regular, unless the contrary appears from the journals themselves. (*Schuyler County* v. *People,* 25 Ill. 163.) Such was the rule adopted in that case and we see no reason for departing from it." This rule of law as laid down in *Wabash Railway Co.* v. *Hughes, supra,* has been approved several times, (*Burritt* v. *Commissioners of State Contracts,* 120 Ill. 322; *Chicago Telephone Co.* v. *Northwestern Telephone Co.* 199 id. 324; *People* v. *McCullough,* 210 id. 488;) and has never before been directly questioned by any decision in this court.

In *People* v. *DeWolf,* 62 Ill. 253, and *Ryan* v. *Lynch,* 68 id. 160, the questions involved were as to the final passage of the bills there considered. Just after these decisions had been handed down by this court, the Federal court for the Illinois circuit, (the late Justice Harlan presiding and writing the opinion,) in the Lake Front case, (*State of Illinois* v. *Illinois Central Railroad Co.* 33 Fed. Rep. 730,) discussed the question whether, if the journal was silent as to the second reading of a bill, that fact would, under our constitution and the decisions theretofore rendered by this court, justify the holding that the law was invalid. After reviewing all the authorities from this State Justice Harlan said (p. 763) : "We do not find that any of the numerous decisions of the State court relating to the passage of bills by the legislature have modified or overruled the doctrine announced in *Supervisors of Schuyler County* v. *People.* With that doctrine we are entirely satisfied. It is in harmony with the adjudications in many of the States whose constitutions have provisions similar to those in the constitution of Illinois which we have been considering. (Citing authorities.) We therefore hold that the mere silence of the senate journal as to whether the act of 1869

was read the second time in that body does not justify us in holding it to be invalid."

It is true that in *People* v. *Knopf*, 198 Ill. 340, and *People* v. *Bowman,* 247 id. 276, statements are made which might be construed as upholding the doctrine laid down in the majority opinion, but in neither of those cases were the statements necessary to the decision of the questions there involved. Neither of those decisions refers to *Schuyler County* v. *People, supra,* or *Wabash Railway Co.* v. *Hughes, supra,* nor to any of the other cases heretofore cited as sanctioning the rule laid down in the case last referred to. In the *Knopf case* it was proved that the bill never passed both houses in the form in which it was signed and approved and filed with the Secretary of State. As the vote on the final passage must be shown on the journals, necessarily the journals could be looked to to see whether the bill became a law. The only point decided in the *Bowman case* had reference to the recording of the yeas and nays on the final passage. Neither of those cases, in my judgment, holds that the steps which the constitution requires to be taken in the passage of bills but does not expressly state must appear in the journal, such as printing the amendments, must so appear.

Under the conclusions reached in the opinion of the court all steps required by the constitution in passing a law must be entered on the journal of each house of the legislature, otherwise the act will be void. This construction of the constitution leaves, it seems to me, without any force or meaning the requirement that the yea and nay vote must be entered upon the journal of each house. The fact that these and other like provisions are inserted, requiring that certain things should be entered at length upon the journals, seems to demonstrate that the members of the convention who drafted the constitution intended that such requirements must be shown on the journals, otherwise the laws would be void, but that laws would not be held void if

other provisions of the constitution not required in specific terms to be entered on the journals were not so entered. If it were intended that all the steps in passing a law must be shown by the journals or the law would be void, why did not the members of the constitutional convention so provide? That the constitution requires certain proceedings of the legislature to be set out in the journals but does not require certain other proceedings to be so set out, proves that the constitutional convention intended to make a distinction between those proceedings that are necessary and those that are not necessary to be shown on the journals.

The printing of amendments to bills not being required by the constitution to be set out on the journals of the legislature, by a fair construction of the constitution and the great weight of authority the courts, in my judgment, ought not to presume, by the mere silence of the journals as to such printing, that the legislature failed to comply in that regard with its duties under the constitution.

Mr. Justice Dunn: I concur in the views expressed by Mr. Chief Justice Carter in the foregoing dissenting opinion.