## HIRAM B. BURRITT

v.

## THE COMMISSIONERS OF STATE CONTRACTS.

*Filed at Ottawa March 22, 1887.*

1. JOINT RESOLUTION *of the two houses of the General Assembly—as having the force of law—diverting appropriations from their appointed purpose.* Under our constitution, the style of all laws must be, "Be it enacted by the People of the State of Illinois, represented in the General Assembly." And no act passed shall embrace more than one subject, and that must be expressed in the title.

2. Every bill for an act must be read at large on three different days in each house, and printed before the final vote thereon, and can not become a law without the concurrence of a majority of the members elected to each house, and the vote must be taken by yeas and nays, on each bill separately, and after such passage every such bill must be signed by the Speaker of each house, and be presented to the Governor for his approval. These constitutional requirements are mandatory, and operate as limitations on the power of the legislature as to the mode in which laws shall be enacted.

3. But a joint resolution passed and adopted by both branches of the legislature, which commences, "Resolved by the Senate, the House of Representatives concurring herein, that," etc., providing for the purchase of books, etc., and has no title or enacting clause, and is not signed by the Speaker of either house, and is wanting in the other essentials to a valid enactment as prescribed in the constitution, is not a law of the State, neither has it the force and effect of a law.

4. The legislature is prohibited by the constitution from diverting to other uses, by joint resolution, appropriations made by law for specified purposes. Legislative appropriations for one purpose, or for two specific purposes, can not be applied to any other purpose whatever.

5. Nor can the legislature, in the absence of an appropriation for that purpose, provide by a joint resolution for the purchase of articles, whereby an indebtedness on the part of the State will be incurred, except when such debt is contracted for the purposes and in the manner pointed out in section 18, article 4, of the constitution.

This was a petition, filed in this court, asking for issue of a writ of *mandamus,* on the grounds and for the purposes fully stated in the opinion of the court.

Mr. E. M. HAINES, and Messrs. McCARTNEY & CASEY, for the petitioner:

A joint resolution has the force of law. *People* v. *Tyndale*, 47 Ill. 538; *Swann* v. *Buck*, 40 Miss. 268; *State* v. *Bailey*, 16 Ind. 46; *McPherson* v. *Leonard*, 29 Md. 377; Footprints of Time, 416.

A joint resolution is the proper manner of expressing the will of a legislative assembly concerning mere temporary matters. Jefferson's Manual of Parliamentary Practice, sec. 21; Barclay's Digest of Parliamentary Practice, 1872, p. 113; Bancroft's Footprints of Time, sec. 416; 3 Lalor's Cyclopedia of Political Science, 89; Cushing's Parliamentary Practice, secs. 752, 2403; Wilson's Digest of Parliamentary Law, 161; May on Law and Usages in Parliament, 315.

Joint resolutions are not prohibited by our constitution, and the General Assembly has every power that is not specially taken from it by the constitution.

The petition in this case only asks that a ministerial body be required to perform a ministerial duty. Rev. Stat. chap. 127, sec. 1.

Legislative construction of constitutional provisions should largely prevail in governing the actions of the courts under them. Session Laws, 1871 and 1872; id. p. 796; *People* v. *Learned*, 12 Hun, 626; *Trammel* v. *Bradley*, 37 Ark. 374; *People ex rel.* v. *Dayton*, 55 N.Y. 367; *Hahn* v. *United States*, 107 U. S. 402; *United States* v. *Recorder*, 1 Blatchf. 218; *Polk* v. *Hill*, 2 Overton, 118; *Love* v. *Hinckley*, Abb. Adm. 436; *United States* v. *McDaniel*, 7 Pet. 1; *United States* v. *Graham*, 110 U. S. 219; *McKeer* v. *Delancy*, 5 Cranch, 22; *United States* v. *Lytle*, 5 McLean, 9; *Railroad Co.* v. *Railroad Co.* 53 Pa. St. 20; *Morrison* v. *Barksdale*, Harp. (S. C.) 101; *Insurance Co.* v. *Hoge*, 21 How. 35; *Rogers* v. *Goodwin*, 2 Mass. 475; *Packard* v. *Richardson*, 17 id. 104; *Plummer* v. *Plummer*, 37 Miss. 185; *Bailey* v. *Rolfe*, 16 N. H. 247; *Chestnut* v. *Shane*, 16 Ohio, 599.

This question was thoroughly investigated by the judiciary committee of the Senate before the joint resolution was finally passed. Journal of Senate, 1885, pp. 785, 798, 855, 864, 875; House Journal, pp. 945, 977, 1045, 1046; *Calder* v. *Bull*, 3 Dall. 386; *Swann* v. *Buck*, 40 Miss. 268; *People* v. *Hatch*, 33 Ill. 9; *Brown* v. *State*, 5 Col. 496; *In re Manhattan*, 82 N. Y. 142; *Linsley* v. *Hubbard*, 44 Conn. 109; *Scanlan* v. *Childs*, 33 Wis. 663; *Solomon* v. *Carterville*, 41 Ga. 157; *People* v. *Allen*, 1 Lans. 248; *United States* v. *Gilmore*, 8 Wall. 330.

Mr. GEORGE HUNT, Attorney General, for the respondents:

Resolutions, as expressive of the legislative will, are recognized but once in our State constitution, and then in a negative way. Art. 4, sec. 17.

Whenever legislation may be accomplished by joint resolution, it must follow substantially the same procedure required for the passage of a bill. It must receive the executive approval, where a bill would require it, or be passed over the executive veto. Const. of the United States, art. 1; Story on Const. secs. 881-891; 6 Op. Attorney General, 680; Bouvier's Law Dic. *sub voce* "Act;" *Hollingsworth* v. *Virginia*, 3 Dall. 378; *State ex rel.* v. *Bailey*, 16 Ind. 46; *In re Picquet*, 5 Pick. 64; Cushing's Law and Prac. sec. 2403; *Boyer* v. *Crum*, 1 W. Va. 176.

Whether a resolution is separate, concurrent or joint, must be gathered from its form. The resolution set forth in the petition has no title, and by its form or style it purports to be nothing more than a concurrent resolution, and there is no pretence that it was ever presented to the executive for his approval.

In the discussion of this question we shall no doubt be met by the proposition that the legislature is supreme as to all legislative matters, and that it can do all things within its

sphere, except where its powers are limited by the constitution. The action of the legislature is the expression of the will of the people, and it will not be denied that such will may be expressed on every subject, and for whatever purpose the legislature may choose.

This resolution has not the force of law, because it has no title. The constitution (art. 4, sec. 13,) declares, that "no act hereafter passed shall embrace more than one subject, and that shall be expressed in the title."

Any resolution, bill or proceeding given the force of law, is an act. Without a title the resolution can not become a law, nor be given the force of law. This resolution has no title at all—hence its subject is not expressed in the title, and it has not the force of law. It has not the force of law, because it is not enacted under the proper style. The constitution (art. 4, sec. 11,) declares, that the style of the laws of this State shall be, "Be it enacted by the People of the State of Illinois, represented in the General Assembly." This resolution is not enacted under any such form.

Where enacting words are prescribed, nothing can be law which is not introduced by these very words, even though others, which are equivalent, are at the same time used. Cushing's Law and Prac. 819, 820; *Seat of Government case,* 1 Wash. Ter. 115; *May* v. *Rice,* 91 Ind. 546.

It has not the force of law, because not read at large on three different days in each house. Art. 4, sec. 13.

The resolution is in direct conflict with the provisions of section 17, article 4, of the constitution, which says: "No money shall be drawn from the treasury, except in pursuance of an appropriation made by law, * * * and no money shall be diverted from any appropriation made for any purpose, or taken from any fund whatever, either by joint or separate resolution."

Mr. JUSTICE SHOPE delivered the opinion of the Court:

The relator, Hiram B. Burritt, is shown to be a justice of the peace of Lake county, and files this petition, in his own behalf, as such officer, and in behalf of all town officers in counties under township organization, and of all justices of the peace in counties not under township organization, to compel the Commissioners of State Contracts to contract for and obtain, for the use of such town officers and justices of the peace, copies of a certain book known as "Haines' Township Organization Laws," as provided in a certain concurrent resolution passed and adopted by the General Assembly at its session in 1885, and which resolution, it is averred, has all the force of law. The resolution referred to is as follows:

"*Resolved by the Senate, the House of Representatives concurring herein,* That the Commissioners of State Contracts be and they are hereby authorized and directed to contract for and obtain such number of copies of a book commonly known as 'Haines' Township Organization Laws,' as shall be sufficient to supply seven copies to each organized township in this State in counties under township organization, for the use of the town officers thereof, and one copy for each justice of the peace in counties not under township organization, at the price of one dollar per copy, said book to contain the laws of Illinois on the subject embraced therein, in force July 1, 1885, the same to be of good paper, equal in quality to the best editions of said book heretofore published, and to be properly bound in a style satisfactory to said commissioners; said books to be distributed by the Secretary of State to the various counties in the State, in the same manner as the session laws are distributed, and furnished to the organized townships and justices of the peace as hereinbefore contemplated, the amount of the cost thereof to be paid out of the appropriation for printing and binding, or any other appropriation made for that purpose: *Provided,* the amount shall not exceed ten thousand dollars ($10,000.)"

It is averred, that the publishers and owners of the copyright of the book referred to, are ready and willing, and have offered, to enter into contract with the respondents to furnish such number of copies of the book as may be required under the resolution; and that respondents have heretofore, and still do, refuse to exercise the authority or to obey the direction in the resolution specified. It is also averred, that this book is of great value to the town officers and justices of the peace, because it contains full information concerning the laws in force pertaining to, and directions respecting the performance of, the duties of their respective offices, and that by the refusal of the respondents to act in the premises, relator and the officers named are deprived of the information and assistance this book would afford them, and the whole public suffer injury and loss. The further averment is, that the obtaining and distribution of these books, in the manner pointed out in the resolution, is a matter of much public interest and importance, and that obedience to and compliance with the directions contained in the resolution, is a public duty the respondents owe, as Commissioners of State Contracts, to the people of the State; and, finally, it is averred, respondents are, in respect of the duties imposed upon them by this resolution, ministerial officers, who can only properly be directed as to their duty by the General Assembly, by resolution of that body, and that direction to executive and ministerial officers by resolution of the General Assembly has become so established by usage and custom and general concurrence, as to have become a law by legislative and executive construction. To the petition respondents have interposed a demurrer.

This proceeding is predicated upon the assumption that this resolution is, to all intents and purposes, a law, to be taken and accepted by the court as the formal will of the legislature, constitutionally expressed, and effect given it as such,—in other words, that this resolution is a law of this State,

obligatory and binding upon the persons named therein, and the court, and of controlling vitality and force in respect of its subject matter. It is true, the relator has attempted to draw a distinction between a joint resolution having the force of law, and a law; but the distinction is not perceived. To say that a resolution has the force of law, and yet is not a law, is a contradiction of terms. That which has the force and vitality of a law, is a law. If, then, this resolution is a law of this State, it was the manifest duty of respondents to obey it; and it is as clearly the duty of the court to compel obedience to it whenever the coercive power of the court is properly invoked.

It is not denied or questioned that the resolution under consideration is an expression of the legislative will upon the subject matter involved therein; but it is insisted that the power thus to express the legislative will, and to give to such expression the force and effect of law, is denied by the constitution. The constitution is the supreme law of the State, and is the permanent and fixed expression of the will of the people, in their sovereign capacity. By the constitution, the legislative power of the State is vested in a General Assembly, consisting of a Senate and House of Representatives, both elected by the people. (Art. 4, sec. 1.) And this legislative power is also constituted one of the three distinct, but coördinate, departments of the State government. (Art. 3.) But it would be absurd to assume that a department created by a constitution could possess the power to abrogate that which gave and continued such department in existence. (*Phœbe* v. *Jay*, Breese, 268.) The legislature is the creature of the constitution, and while the accepted American doctrine is, that in the exercise of the legislative function the legislature may do what is not forbidden, clearly it may not do that which is prohibited by the constitution under which it exists. "No proposition is better settled," said this court, in *Field* v. *The People*, 2 Scam. 79, "than that a State constitution is a

limitation upon the powers of the legislature." See, also, *Sawyer* v. *City of Alton*, 3 Scam. 127; *The People* v. *Marshall*, 1 Gilm. 685; *The People* v. *Reynolds*, 5 id. 1; *The People* v. *Salomon*, 51 Ill. 49; *Cairo and St. Louis Railroad Co.* v. *Warrington*, 92 id. 157; *Richards* v. *Raymond*, id. 612; *Winch* v. *Tobin*, 107 id. 212.

If it be assumed that this resolution was passed and adopted by both branches of the legislature, and is a legislative act,—an expression of the legislative will,—the question for consideration is, does it possess, under the constitution, the force and vitality of a law. If the resolution does possess this force and vitality, it must be, as we have seen, because the constitution has not placed restrictions or limitations upon the legislative department in the exercise of its law-making power, inconsistent with the act under consideration. Or, stated conversely, if the constitution has not, by express provision or by necessary implication, provided the mode and manner by which the will of the people is to be crystallized into law, by requiring specific acts, steps and formalities to be observed by the legislative department, and, finally, the active concurrence of another of the coördinate departments of the State government, then, upon general principles, it might be said, that this resolution, being, in a derivative sense, the will of the people,—the people being, primarily, the source of all power,—is law.

Upon looking into the constitution, it will be observed that "The style of the laws of this State shall be: *'Be it enacted by the People of the State of Illinois, represented in the General Assembly.'*" (Art. 4, sec. 11.) This has been the "style" of the laws of this State since its organization. Then, "No act hereafter passed shall embrace more than one subject, and that shall be expressed in the title." (Art. 4, sec. 13.) Every bill for an act must, it would seem, have a title. (*Binz* v. *Weber*, 81 Ill. 288.) Then, too, every bill for an act must be read at large on three different days, in each house, and

printed before the final vote thereon, (art. 4, sec. 13,) and can not become a law without the concurrence of a majority of the members elected to each house, and on its final passage the vote must be by yeas and nays, on each bill separately, (art. 4, sec. 12,) and having so passed both houses, every such bill must be signed by the Speaker of each house, (art. 4, sec. 13,) and before it can become a law it must "be presented to the Governor. If he approve, he shall sign it, but if he do not approve, he shall return it, with his objections," etc. And this negative action of the executive department is potent enough to prevent the act from becoming a law, unless, speaking generally, the legislative department can again pass it by a specified increased vote. (Art. 5, sec. 16.) And, finally, "No money shall be drawn from the treasury except in pursuance of an appropriation made by law, * * * and no money shall be diverted from any appropriation made for any purpose, or taken from any fund whatever, either by joint or separate resolution." (Art. 4, sec. 17.) And appropriation bills must not only specify the object and purpose for which the appropriation is made, but for each purpose there must be a distinct amount, in distinct items and sections and the Governor may veto any one or more of such amounts and items. (Art. 5, sec. 16.)

The foregoing sections of articles 3, 4 and 5, of the constitution, are the only ones in that instrument prescribing the mode in which the will of the people, acting through the legislative and executive departments of the government, can become law. Being found in the constitution, if they are to be regarded as mandatory, they operate as limitations upon the power of the legislative department to give to its action, in any case, the force and effect of law.

That these various provisions, giving the form and mode by which, through the concurrent action of the legislative and executive departments, valid and binding laws are enacted, are, in the highest sense, mandatory, can not be doubted.

*Jones* v. *Hutchinson,* 43 Ala. 712; *Moody* v. *The State,* 48 id. 115; *Supervisors* v. *Henan,* 2 Minn. 330; *Indiana Central Railway Co.* v. *Potts,* 7 Ind. 683; *Legg* v. *Mayor,* 42 Md. 203; *Turley* v. *Logan County,* 17 Ill. 151; *Spangler* v. *Jacoby,* 14 id. 297; *Ryan* v. *Lynch,* 68 id. 160.    Judge Cooley, in his work on Constitutional Limitations, says, (5th ed.) 156: "It is a necessary attribute of sovereignty, that the expressed will of the sovereign is law; and while we may question and cross-question the words employed to make certain the real meaning, and may hesitate and doubt concerning it, yet, when the intent is made out, it must govern, and it is idle to talk of forms that should have surrounded the expression, but do not. But when the legislative power of a State is to be exercised by a department composed of two branches, or, as in most of the American States, of three branches, and these branches have their several duties marked out and prescribed by the law to which they owe their origin, and which provides for the exercise of their powers in certain modes and under certain forms, there are other questions to arise than those of the mere intent of the law-makers, and sometimes forms become of the last importance,—for, in such case, not only is it important that the will of the law makers be clearly expressed, but it is also essential that it be expressed in due form of law, since nothing becomes law simply and solely because men who possess the legislative power will that it shall be, unless they express their determination to that effect in the mode pointed out by the instrument which invests them with the power, and under all the forms which that instrument has rendered essential." And in the well considered case of *State* v. *Platt,* 2 S. C. 150, we find it said: "Under the constitution, the question, whether an act of legislation has the force of law, does not depend merely upon the constitutional majorities of the two houses having so determined, but upon the performance of certain acts, in part legislative and in part executive, and following each other in a certain order.    By

section 21, article 2, it must have been read three times, and
on three several days, in each house. It must have the great
seal of the State affixed to it, and it must be signed in the
Senate-House by the President of the Senate and the Speaker
of the House of Representatives. By section 22, article 3, it
must have been presented to the Governor, and have been
approved and signed by him.  *   *   *   When these pre-
requisites are complied with, the act acquires the force of law,
under the terms of the constitution. If either one fails, there
can not be a compliance with the conditions upon which,
under the express terms of the constitution, the force of the
act, as law, depends." In the case under consideration, the
allegation of the petition is, that at the session of the Gen-
eral Assembly of this State, held in the year 1885, "the
following joint resolution was passed and adopted by said
General Assembly, and the same then and there became, and
is now, a joint resolution of the said General Assembly, and
was then and thereby given, and now has, all the force of law,
to-wit: 'Resolved by the Senate, the House of Representatives
concurring herein, That,'" etc., setting out the same in hæc
verba.

Cases are not wanting where this court has presumed, in
the absence of proof to the contrary, that certain constitu-
tional requirements were observed. For example, in Spangler
v. Jacoby, 14 Ill. 297, where it appeared the Speakers of the
two houses, and the Governor, had signed the act, it was pre-
sumed, in the absence of proof, that it had become a law in
pursuance of the constitution. Or, Supervisors v. The People
ex rel. 25 Ill. 181, where the Senate journal did not show the
bill had been read three times, in the absence of other proof it
was presumed to have been read as required by the constitu-
tion. But, here, we can not apply the doctrine of presump-
tions. That which is alleged to be a law is, upon its face,
without the form or semblance of a law; and as there are in
the petition no averments in respect of the various constitu-

tional prerequisites, and the demurrer can not be said to admit anything more than is material and properly pleaded, there is no foundation whatever upon which to rest a presumption. If the various constitutional provisions respecting the form, component parts, elements and mode of procedure, in and by which the legislative will and executive consent ultimately become a valid and binding law, are mandatory in their character, and so connected and interwoven with the exercise of the legislative and executive power and authority as to be essential and indispensable parts thereof, as we hold they are, then it follows that this resolution can not be held to be a law. It is not the will of the people, constitutionally expressed, in the only mode and manner by which that will can acquire the force and vitality, under the constitution, of law, for this legislative act is without a title, has no enacting clause, is not signed by the Speakers of both houses, or either house, has not the signature and approval of the executive, nor is there anything from which it can be seen that it falls within the cases where a legislative act, in other respects constitutional, may become a law without executive approval; and although, in the passage and adoption of this resolution, every other constitutional requirement may have been observed, the absence of those enumerated is sufficient to deprive this expression of the legislative will of the force and effect of law; and the same did not become, therefore, and is not, legally binding and obligatory upon the respondents.

But this resolution, treating it as a joint resolution, must be held to be void, as in violation of section 17, of article 4, of the constitution, for the reason that it is an attempt to divert, by joint resolution, appropriations made by law for other purposes. By the resolution it is provided, that the books to be purchased are to be paid for "out of the appropriation made for printing and binding, or any other appropriation made for that purpose: *Provided*, the amount shall not exceed ten thousand dollars." At the same session of the leg-

islature, an appropriation was made of $35,000, "or so much thereof as may be required," for printing, and of $10,000, "or so much thereof as may be required," for binding; and it was directed that "the public printing and binding to be paid for, according to the contract, upon the certificate of the Board of Commissioners of State Contracts, and approved by the Governor." (Laws 1885, p. 49.) Here were two specific appropriations for two specific purposes, entirely separate and distinct, and having no necessary connection with each other. The art or trade of printing is separate and distinct from the art or trade of binding; and although, in the manufacture of a book, both arts are resorted to, they are not the only ones employed. Before the printer can be set at work to print, the paper must be provided by the paper maker, and the ink by the ink maker. An appropriation for printing is not an appropriation for paper, and is not so understood by the legislature, for in the same act where these specific sums are appropriated for printing and for binding, appears an appropriation for $15,000 for printing paper and stationery. Nor is it understood by the legislature that an appropriation for printing and for binding is an appropriation for purchasing books, for also in the same act appear five separate and distinct appropriations for purchasing books, aggregating over $5500.

This resolution directed that the cost of the books respondents were by it authorized and directed to purchase, should be paid for out of "the appropriation for printing and binding, or any other appropriation made for that purpose." No further argument is required to reach the conclusion that an appropriation of $35,000 for printing is not an appropriation for purchasing books; nor is an appropriation of $10,000 for binding an appropriation for purchasing books. Nor, again, is an appropriation of $35,000 for printing, and an appropriation of $10,000 for binding, an appropriation for "printing and binding." It follows, that if the cost of these books

was to be paid for out of the two appropriations referred to, as relator contends was the intention, it was an attempt to divert these specific appropriations, by joint resolution, from the purposes for which they were made, which is forbidden by the constitution. And, again, as there was no appropriation made for "printing and binding," there was no appropriation available for the payment of the cost of these books, had they been purchased; and the effect of their purchase, under such circumstances, would have been the incurring of a debt by the State, which is prohibited, unless the debt is contracted for the purposes and in the mode pointed out in section 18, of article 4, of the constitution.

Some of the positions and arguments presented and urged with much force by relator, must be noticed. And

*First*—Legislative construction of the constitution. Under this head we are referred to quite a number of joint resolutions of the General Assembly, since the adoption of the present constitution, which are said to be inconsistent with the views here announced. We have not felt it necessary to examine them all minutely, to determine whether such inconsistency exists in every case; but we have gone far enough to satisfy us that in most of the instances the inconsistency referred to is only apparent and not real. We find, for example, some instances where the Governor has been requested to pay certain claims out of his contingent fund. This we can not regard as the diverting of an appropriation made for another purpose. The very object and purpose of placing such a fund under the control of the executive is, obviously, to meet unforeseen contingencies, and the resolutions may well be regarded as no more than advisory,—as intended to give the executive the benefit of the opinion of a coördinate department of government. Then, in other cases, joint committees of the two houses, and joint commissioners of the two houses, were sent on different missions, and, with their clerks, allowed for the extra service, and chaplains, clerks, etc., were directed to be

put upon the pay-rolls of the two houses; but these expenses all appear to have been paid out of the legislative appropriation, and to be in no sense a diversion of such appropriation. No instance has been pointed out, so far as we have observed, where the legislature has before attempted, by joint resolution, to divert a specific appropriation to any purpose other than that for which it was made, nor authorizing an obligation to be incurred on behalf of the State for which no appropriation was available. However ready and willing the court might be, in a case of doubt and uncertainty, to turn to contemporaneous construction of the constitution by a coördinate department of government, nothing suggested in this case has raised a doubt in our minds as to the true construction to be placed upon the various provisions of the constitution referred to, and we find no occasion to resort to legislative construction.

*Secondly*—The practice of the Congress of the United States. True, Congress authorizes expenditures, and may appropriate money, by joint resolution, and that form of legislation is fully recognized, and is "put upon the same footing, and made subject to the same regulations, with bills, properly so called. In Congress, a joint resolution * * * is regarded as a bill." (Cushing's Law and Practice, sec. 2403.) But this is so, we must believe, because of the character of the provisions of the constitution of the United States. Clause 3, of section 7 of article 1, reads: "Every order, resolution or vote to which the concurrence of the Senate and House of Representatives may be necessary, (except on a question of adjournment,) shall be presented to the President of the United States, and, before the same shall take effect, shall be approved by him, or, being disapproved by him, shall be re-passed by two-thirds of the Senate and House of Representatives, according to the rules and limitations prescribed in the case of a bill." A joint resolution is there placed on the same footing as a bill, and, apparently, the same formalities in respect of the vote by which it is adopted, and the approval of the executive,

are required as in the case of a bill, while in our constitution the resolution is unknown as a mode by which laws are enacted. The word "resolution," so far as we are advised, occurs but three times in our constitution: First, in the oath administered to the members of the General Assembly. (Art. 4, sec. 5.) Second, allowing members to protest against any act or resolution. (Art. 4, sec. 10.) And third, forbidding the diverting of an appropriation. (Art. 4, sec. 17.) And while, in respect of many matters, the legislature may speak by resolution, under our constitution it is denied the power to enact laws except in the mode so carefully pointed out.

*And Third*—The practice in other States. It has not seemed to us necessary to extend this opinion by a reference to the constitutions of other States and the practice there recognized. The provisions of our constitution are so plain, and the intent of the people to prescribe the only mode and manner by which laws should be enacted or appropriations made, and money diverted from appropriations already made, are so manifest, that such examination and comparison could afford us no assistance.

We therefore hold, that the joint resolution of the General Assembly, passed and adopted in 1885, and set out in relator's petition, did not have the force of law, and imposed no duty or obligation upon the respondents; that, considered as a joint resolution of the General Assembly, it is void under the constitution, as attempting to divert, by joint resolution, appropriations made by law for other purposes; and that it is also void, as attempting to authorize the creation of a debt of the State for purposes and in a manner forbidden by the constitution.

The demurrer is sustained and the petition dismissed.

*Petition dismissed.*