(No. 19364.—

THE CITY OF CARLYLE, Appellee, *vs.* C. H. NICOLAY *et al.* Appellants.

*Opinion filed February 20, 1929.*

O'Neill & O'Neill, for appellants.

Andrew O. Niehoff, and Hugh V. Murray, for appellee.

Mr. Justice Dunn delivered the opinion of the court:

This is an appeal from a judgment of the county court of Clinton county confirming a special assessment for the cost of construction of the local improvement of Livingston street, in the city of Carlyle. Numerous objections were filed by the owners of property assessed, and on August 11, 1928, all the objections were overruled and a judgment of confirmation of the assessment was rendered, from which the objectors have appealed.

Among other objections filed was one that the ordinance referred to in the petition was not adopted by the city council of the city of Carlyle and was therefore void. The supposed ordinance attached to the petition was introduced in evidence over the objection of the appellants, and purported to be an ordinance not of the city council but of the board of local improvements of the city of Carlyle. As set forth in the abstract it begins with the words, "Be it ordained by the board of local improvements of the city of Carlyle, Illinois, that a local improvement be, and the same is hereby originated to be made by special assessment within the city of Carlyle, State of Illinois." A description of the proposed improvement follows. Section 2 reads: "That the recommendation of the board of local improvements of the

city of Carlyle, Illinois, providing for said improvement, together with the estimate of costs thereof, made by the president of said board, both hereto attached, be and the same are hereby approved." Section 3 provides that the whole cost of the improvement, including the sum of $2422.29 as costs of engineer's services connected with the improvement and $4844.58 as court costs and necessary lawful expenses, exclusive of the costs of engineering services, and the cost of making, levying and collecting the assessment, be paid for by special assessment upon property benefited, to the amount that the property may be legally assessed therefor. The fourth and fifth sections provide for the division of the assessment into ten installments and the issue of bonds payable out of such installments. Section 6 directs the mayor of the city to file a petition in the city's name in the county court of Clinton county praying that steps may be taken to levy a special assessment for the improvement in accordance with the provisions of the ordinance and the laws of the State. The abstract shows no certificate attached to the ordinance, but at the bottom appears the following:

"Passed at a regularly called and held meeting of the city council of the city of Carlyle, this 1st day of June, A. D. 1928, for the specific purpose of considering this ordinance and other matters. Voting yea, Henry C. Cavin, John D. Erlinger, John L. Moran; voting nay, J. H. Donnewald, James J. Gray, John L. Higgins. Tie vote. Mayor Theo. H. Gross voted yes. Carried.
J. ARCH MEANS, *City Clerk."*

Objection was made to the introduction of the supposed ordinance on the ground "that the ordinance is not the ordinance of the city council of the city of Carlyle, and on the further ground that the enacting portion of the ordinance is not proper, and on the further ground that it purports to have been passed by a tie vote, with the mayor casting the vote."

It is ordinarily not necessary to prove the ordinance in a special assessment proceeding. The statute requires a

copy of the ordinance, certified by the clerk under the corporate seal, to be filed with or attached to the petition. The ordinance so attached to or filed with the petition becomes a part of the petition and therefore a part of the record. (*City of Marengo* v. *Eichler,* 245 Ill. 47; *Lundberg* v. *City of Chicago,* 183 id. 572; *Foss* v. *City of Chicago,* 184 id. 436.) In this case, however, the objections put in issue the passage of the ordinance by the city council, and it was therefore necessary to prove it. The appellee offered in evidence the petition and the exhibits attached, including the ordinance, and the appellants specifically objected to the ordinance on the ground that it "is not the ordinance of the city council of the city of Carlyle, and on the further ground that the enacting portion of the ordinance is not proper, and on the further ground that it purports to have been passed by a tie vote, with the mayor casting the vote." The objections made, based solely upon the specific grounds stated, waived all objections based on other facts not mentioned. *Terre Haute and Indianapolis Railroad Co.* v. *Voelker,* 129 Ill. 540; *Village of Prairie du Rocher* v. *Milling Co.* 248 id. 57.

Section 2 of article 5 of the Cities and Villages act prescribes that the style of the ordinances in cities shall be, "Be it ordained by the city council of . . . . . . . . . . . ." The ordinance relied on in this case contains no such expression of the authority by which it is enacted. It does not profess on its face to be enacted by the authority of the city council of the city of Carlyle but purports to be ordained by the board of local improvements of the city of Carlyle. The board of local improvements has no authority to make local improvements by special assessment, special taxation or otherwise, or to adopt an ordinance for such purpose. Its function is to do in the first instance certain preliminary work, mainly in ascertaining facts necessary for the council to know before determining whether or not to provide for the making of an improvement and in recommending to

the council the passage of an ordinance for that purpose, (*Givins* v. *City of Chicago,* 188 Ill. 348,) and it has also important duties in regard to the making of contracts for the construction of such improvements and the performance of such contracts. (*Village of Bellwood* v. *Galt,* 321 Ill. 504.) While, in the absence of a resolution of the board of local improvements prescribing the nature, locality and description of the improvement and providing whether the same shall be made by special assessment or special taxation of contiguous property and presented to the city council together with a recommendation of the improvement signed by a majority of the board of local improvements, the city council would have been without authority to pass the ordinance for this improvement, yet these things, though essential, were all merely preliminary to the passage of the ordinance by the city council. An ordinance duly adopted by the city council lies at the foundation of every special assessment proceeding. The board of local improvements is without any authority to adopt such an ordinance. It can only recommend, and the city council, alone, can adopt, such an ordinance. It is essential for the city, in order to obtain a judgment of confirmation, to aver and prove that an ordinance authorizing the improvement had been passed by the city council. *Lindsay* v. *City of Chicago,* 115 Ill. 120.

It is said in *Hibbard, Spencer, Bartlett & Co.* v. *City of Chicago,* 173 Ill. 91, that "section 2 of article 5 of the City and Village act provides that 'the style of the ordinances in cities shall be: Be it ordained by the city council,' etc. And section 13 of article 3 of the same chapter provides: 'The yeas and nays shall be taken upon the passage of all ordinances, and on all propositions to create any liability against the city or for the expenditure or appropriation of its money, and in all other cases at the request of any member, which shall be entered on the journal of its proceedings; and the concurrence of a majority of all the members elected in the city council shall be necessary to the passage of any such

ordinance or proposition.' By this provision of the statute an enacting clause is provided for the adoption of ordinances, and a majority of the members of the city council is necessary to the passage of any such ordinance. A resolution of the city council or an order of that body may be adopted as an order or resolution by a majority of a quorum present, but such order or resolution so adopted would not necessarily require the concurrence of a majority of the members elected in the city council, and in this respect the adoption of an order or resolution materially differs from the adoption of an ordinance."

In *Chicago and Northern Pacific Railroad Co.* v. *City of Chicago,* 174 Ill. 439, it is said: "The proof in the case showed that the order of March 23, 1896, was not styled in accordance with section 2 of article 5 of part 1 of the City and Village act. Section 2 requires that the style of the ordinance in cities shall be: 'Be it ordained by the city council of............' The proof also shows that the order of March 23, 1896, was not passed by a majority of the members of the city council, as required by section 13 of article 3 of part 1 of the City and Village act; also, that the yeas and nays were not taken upon its passage, as required by said section 13; also, that the yeas and nays were not duly entered upon the journal of the proceedings of the city council, as required by said section 13; also, that the same was not presented to the mayor for his approval, as required by section 18 of said article 3. [Citing decisions.] It is thus clearly shown that the order in question lacked the requirements which the statute makes necessary in order to constitute a valid ordinance. The order in question was nothing more than a mere resolution and in no sense an ordinance." This case was followed by the case of *McDowell* v. *People,* 204 Ill. 499, holding a resolution of the city council establishing the grades of the city invalid as an ordinance for the same reasons and quoting the language which we have just quoted.

In *Galt* v. *City of Chicago,* 174 Ill. 605, the city council attempted to amend a special assessment ordinance and change the character of the pavement proposed by substituting concrete for expanded metal. In the opinion it is said: "The certified copy introduced in evidence does not have the formal commencement prescribed by statute for ordinances, and the clerk uses the words 'two orders' in his certificate relating to the action in question of the council, and the record of the council proceedings contains the following in reference thereto: 'Ald. Martin presented the following orders, * * * which were, on motion, duly passed.' An ordinance cannot be amended in this way, and these orders had no effect upon it."

In *People* v. *Mount,* 186 Ill. 560, it is said: "It is laid down in the authorities that the charter of a city bears the same general relation to the ordinances of a city that the constitution of a State bears to its statutes. (1 Dillon on Mun. Corp.—4th ed.—sec. 308, p. 385, and notes; *Quinette* v. *St. Louis,* 76 Mo. 402.) Hence, a city ordinance which does not comply with the city charter is as invalid as a statute which does not conform to the requirements of the State constitution. The charter of every municipal corporation, or the statute by which it is created, is its organic act, and the corporation cannot do any act not authorized by such charter or by some legislative act applicable thereto."

It is a general rule that when the legislature grants to a municipal corporation power to do any act and prescribes the manner in which the power shall be exercised, the power must be exercised in the manner stated in the grant and not otherwise. In *Chicago Union Traction Co.* v. *City of Chicago,* 207 Ill. 544, it was held "that the constitutional provision requiring that no law shall contain more than one subject, which shall be clearly expressed in its title, only applies to State legislation and not to the ordinances of cities, and that in the absence of a statute containing a simi-

lar requirement to the constitution in the passage and adoption of ordinances, the constitutional requirement as applicable to acts of the General Assembly need not be observed in the passage of ordinances." We also said: "The only statutory requirement as applied to ordinances is as to the style or enacting clause, and the requirement is that the style of the ordinance shall be: 'Be it ordained by the city council of,' etc. (Hurd's Stat. 1899, chap. 24, art. 5, par. 63.) To require of cities and villages the same certainty and care with reference to the titles of ordinances that is required of the General Assembly in the enactment of laws for the State would, we think, be requiring of such city and village authorities greater precision than is contemplated by the law or ought reasonably to be expected of bodies constituted as they are authorized to be."

In *Bullis* v. *City of Chicago,* 235 Ill. 472, there was a question as to the validity of the action of the city council purporting to increase the number of police officers on the police force. That action was shown by the following extract from the proceedings of the city council: "Ald. Cullerton presented the following order: 'Ordered that the superintendent of police be, and he is hereby, authorized to increase the number of police officers on the police force by filling vacancies wherever they exist and are necessary, the total number of officers on the force, however, after such increase is made, not to exceed the number authorized to be appointed under the appropriation budget of 1901.' Which was, on motion, duly passed by yeas and nays, as follows:—followed by the names of sixty-six aldermen voting yea and one voting nay." The appellee introduced in evidence, over appellant's objection, the appropriation ordinance for the year 1901, showing the appropriation of $2,500,000 for 2500 patrolmen at $1000 each; also the appropriation ordinances for the years 1903, 1904, 1905 and 1906, showing appropriations in those years, respectively, for 2380, 2306, 2278 and 2196 patrolmen. The court

said: "It was error to admit this evidence. The statute requires the action of the city council, in providing for the election or appointment of officers other than those mentioned in the statute, to be by ordinance. It cannot act by mere resolution. The order of the council of January 5, 1903, was only a resolution. It was not an ordinance and did not purport to be one. It was not styled in accordance with section 2 of article 5 of the City and Village act, which requires the style of ordinances to be, 'Be it ordained by the city council of.............' It purported to increase the number of police officers, but if any number of police officers had been theretofore authorized to be appointed it must have been done by ordinance, and that ordinance could not be amended or modified by a resolution of the council."

Section 11 of article 4 of the constitution prescribes that the style of the laws of this State shall be: "Be it enacted by the People of the State of Illinois, represented in the General Assembly." The requirement of section 2 of article 5 of the Cities and Villages act is of the same character and the same effect in regard to the style of the ordinances of the city as the constitutional provision in regard to the laws of the State, though the language is adapted to the difference in organization and action of the General Assembly and the city council; and the law with reference to the validity of legislative action as affected by the respective provisions is the same, the charter of the city, or the statute by which it is created, being its organic act, bearing the same general relation to the ordinances of the city as the constitution, which is the organic act of the State, bears to its statutes. *People v. Mount, supra.*

The requirement of the constitution in regard to the style of the laws of this State has been the same since its organization. (Const. of 1818, art. 2, sec. 17; Const. of 1848, art. 3, sec. 20.) We said in *People v. Bowman,* 247 Ill. 276, that the journals of the senate and house of representatives must show on their face a compliance with

every requirement of the constitution, from the introduction of a bill until its final passage, or it will not become a law. This principle was announced in *Spangler* v. *Jacoby,* 14 Ill. 297. In regard to the act in question in that case it appeared that a bill was introduced in the senate and passed and was reported to the house of representatives, where it was amended; that it was sent to the senate without having been read the third time or the ayes and noes called, so far as shown by the journal of the house, for the senate's concurrence; that the senate concurred in the amendment and passed the bill and that the bill was signed by the speaker of the two houses and by the Governor. In deciding that the bill would not become a law the court said: "A majority of all the members elected to either branch of the General Assembly must concur in the final passage of a bill. This is indispensable to its becoming a law. Without it the act has no more force than the paper upon which it is written. The vote must be taken by ayes and noes. The constitution prescribes this as the test by which to determine whether the requisite number of members vote in the affirmative. The vote must also be entered on the journal. The office of the journal is to record the proceedings of the house and authenticate and preserve the same. It must appear on the face of the journal that the bill passed by a constitutional majority. These directions are all clearly imperative. They are expressly enjoined by the fundamental law and cannot be dispensed with by the legislature. There are some other requirements equally essential and that can no more be disregarded. A bill must be signed by the speakers of both houses and then be presented to the Governor for his action. If he consents, his approval is indorsed on the bill; if he returns it with objections, it must again be passed through each house by a majority of all its members; if he does not return the bill within ten days and the legislature still remains in session, it becomes a law without his signature."

The effect of a failure to comply with the requirement of the constitution in regard to the style of laws was considered in the case of *Burritt* v. *Commissioners of State Contracts*, 120 Ill. 322. The legislature in that case attempted to appropriate $10,000 for procuring such number of copies of "Haines' Township Organization Laws" as should be sufficient to supply seven copies to each organized township in the State in counties under township organization for the use of the town officers and one copy for each justice of the peace in counties not under township organization, by means of a joint resolution commencing, "Resolved by the senate, the house of representatives concurring herein." A petition for a writ of *mandamus* to compel the proper officers of the State to enter into a contract for furnishing such number of books as might be required under the resolution was filed, based on the assumption that the resolution was a law of the State. The court said: "Upon looking into the constitution it will be observed that 'The style of the laws of this State shall be: Be it enacted by the People of the State of Illinois, represented in the General Assembly.' (Art. 4, sec. 11.) This has been the 'style' of the laws of this State since its organization." After referring to the provisions of sections 12 and 13 of article 4 and section 16 of article 5, the court continued: "The foregoing sections of articles 3, 4 and 5 of the constitution are the only ones in that instrument prescribing the mode in which the will of the people, acting through the legislative and executive departments of the government, can become law. Being found in the constitution, if they are to be regarded as mandatory they operate as limitations upon the power of the legislative department to give to its action, in any case, the force and effect of law. That these various provisions, giving the form and mode by which, through concurrent action of the legislative and executive departments, valid and binding laws are enacted, are in the highest sense mandatory cannot be

doubted. [Citing authorities.] Judge Cooley, in his work on Constitutional Limitations, says (5th ed. 156) : 'It is a necessary attribute of sovereignty that the expressed will of the sovereign is law, and while we may question and cross-question the words employed to make certain the real meaning and may hesitate and doubt concerning it, yet when the intent is made out it must govern, and it is idle to talk of forms that should have surrounded the expression but do not. But when the legislative power of a State is to be exercised by a department composed of two branches, or, as in most of the American States, of three branches, and these branches have their several duties marked out and prescribed by the law to which they owe their origin, and which provides for the exercise of their powers in certain modes and under certain forms, there are other questions to arise than those of the mere intent of the law-makers, and sometimes forms become of the last importance, for in such case not only is it important that the will of the law-makers be clearly expressed, but it is also essential that it be expressed in due form of law, since nothing becomes law simply and solely because men who possess the legislative power will that it shall be, unless they express their determination to that effect in the mode pointed out by the instrument which invests them with the power and under all the forms which that instrument has rendered essential.' * * * Cases are not wanting where this court has presumed, in the absence of proof to the contrary, that certain constitutional requirements were observed. For example, in *Spangler* v. *Jacoby,* 14 Ill. 297, where it appeared the speakers of the two houses and the Governor had signed the act, it was presumed, in the absence of proof, that it had become a law in pursuance of the constitution. Or (*Supervisors* v. *People ex rel.* 25 Ill. 181,) where the senate journal did not show the bill had been read three times, in the absence of other proof it was presumed to have been read as required by the constitution. But here we cannot

apply the doctrine of presumptions. That which is alleged to be a law is upon its face without the form or semblance of a law, and as there are in the petition no averments in respect of the various constitutional prerequisites, and the demurrer cannot be said to admit anything more than is material and properly pleaded, there is no foundation whatever upon which to rest a presumption. If the various constitutional provisions respecting the form, component parts, elements and mode of procedure, in and by which the legislative will and executive consent ultimately become a valid and binding law, are mandatory in their character and so connected and interwoven with the exercise of the legislative and executive power and authority as to be essential and indispensable parts thereof, as we hold they are, then it follows that this resolution cannot be held to be a law. It is not the will of the people, constitutionally expressed, in the only mode and manner by which that will can acquire the force and vitality, under the constitution, of law, for this legislative act is without a title, has no enacting clause, is not signed by the speakers of both houses or either house, has not the signature and approval of the executive, nor is there anything from which it can be seen that it falls within the cases where a legislative act, in other respects constitutional, may become a law without executive approval; and although in the passage and adoption of this resolution every other constitutional requirement may have been observed, the absence of those enumerated is sufficient to deprive this expression of the legislative will of the force and effect of law, and the same did not become, therefore, and is not, legally binding and obligatory upon the respondents."

In the cases which have been cited there was a failure to comply with more than one of the constitutional requirements; but this is immaterial, for if the sections of articles 3, 4 and 5 of the constitution, which are cited in the case from which we have just quoted, are to be regarded as mandatory and so connected and interwoven with the

exercise of the legislative power and authority as to be essential and indispensable parts thereof, then, as stated in that case, they operate as limitations upon the power of the legislative department, and no action of the legislature can be held to be a law which violates any one of those limitations. While the decisions of the courts of other States are not all in harmony with the decision in *Burritt* v. *Commissioners of State Contracts, supra,* the majority of the courts hold that where there is a constitutional provision requiring an enacting clause, the requirement is mandatory. *People* v. *Dettenthaler,* 118 Mich. 595; *Sjoberg* v. *Security Savings and Loan Ass'n,* 73 Minn. 203; *State* v. *Burrow,* 119 Tenn. 376; *May* v. *Rice,* 91 Ind. 546; *State* v. *Patterson,* 98 N. C. 660; *State* v. *Rogers,* 10 Nev. 250; *Vinsant* v. *Knox,* 27 Ark. 266; *Walden* v. *Whighan,* 120 Ga. 646; *Mathis* v. *State,* 31 Fla. 291; *Commonwealth* v. *Illinois Central Railroad Co.* 160 Ky. 745.

In *Sjoberg* v. *Security Savings and Loan Ass'n, supra,* the court, holding the constitutional provision mandatory and a statute without any enacting clause void, said: "All written laws, in all times and in all countries, whether in the form of decrees issued by absolute monarchs, or statutes enacted by king and council, or by a representative body, have, as a rule, expressed upon their face the authority by which they were promulgated or enacted. The almost unbroken custom of centuries has been to preface laws with a statement in some form declaring the enacting authority. If such an enacting clause is a mere matter of form—a relic of antiquity—serving no useful purpose, why should the constitutions of so many of our States require that all laws must have an enacting clause, and prescribe its form? * * * It is not necessary to go to the extent of holding that in the absence of any constitutional provision on the subject a statute without an enacting clause would be void, but we do hold that the framers of our constitution, and the people adopting it, advised by the usages of the past and the

wisdom and legal learning of the men who had framed the constitutions for so many other States, regarded an enacting clause in a law as useful, necessary and proper, and that they therefore anchored in the constitution a requirement that every law should have an enacting clause and prescribed the form thereof."

"The enacting clause is the section of a bill or statute which establishes the whole document as a law." (Anderson's Law Dict.; *Pearce* v. *Vittum,* 193 Ill. 192.) It is no more a part of the first section of the act than of any other section. It is a part of each section and establishes every section as the law. In the process of legislation a motion to strike out the enacting clause of a bill is a common method of attack, and the adoption of such a motion is regarded as the final adverse disposition of the bill. The repealing of the first section of an act of several sections does not, however, leave the remainder of the act without an enacting clause and so invalid, but the enacting clause attaches and belongs to every section of the act. *Pearce* v. *Vittum, supra.*

The Cities and Villages act is the charter of the appellee, which is held in *People* v. *Mount, supra,* to bear the same relation to the ordinance of the city that the constitution of the State bears to the statutes. The same rules apply to the construction of section 5 of article 2 of the Cities and Villages act as to section 11 of article 4 of the constitution. The style of the ordinance,—that is, the enacting clause,—which expresses upon the face of the ordinance the authority by which it is enacted, is subject to the same rule of construction as the style of the statute, which expresses on the face of the statute the authority by which the statute is enacted, and the two are subject to the same rule of construction. Where the method of passing an ordinance is prescribed by the organic law of a municipal corporation, it can no more pass an ordinance in disregard of the requirement of such organic law than the legislature

may pass a statute in disregard of a constitutional limitation. The supposed ordinance attached to the petition was not a valid ordinance of the city of Carlyle and therefore constituted no basis for the levying of a special assessment.

The judgment of the county court is reversed and the cause remanded, with directions to dismiss the petition as to the appellants.

*Reversed and remanded, with directions.*