Paul Booth *et al.*, Plaintiffs-Appellants, *v.* Corn Products Company *et al.*, Defendants-Appellees.

(No. 57010;

First District—December 18, 1972.

Mary Lee Leahy, of Jewel N. Klein, and Thomas R. Meites, of Businessmen for the Public Interest, both of Chicago, for appellants.

Miles G. Seeley and Robert F. Finke, both of Chicago, for appellee CPC International.

Howard Neitzert, James W. Kissell, George A. Platz, and Thomas M. McMahon, all of Chicago, (Sidney & Austin, and Mayer, Brown & Platt, of counsel,) for appellee Proctor & Gamble Mfg. Co.

Mr. JUSTICE BURKE delivered the opinion of the court:

On November 30, 1970, the plaintiffs, seven taxpayers, brought an action to enforce Illinois Revised Statutes, 1969, ch. 42, par. 326a. The complaint alleged that this statute makes it unlawful for any person to dump more than 3,650,000 gallons of waste water in the sewers of The Metropolitan Sanitary District of Greater Chicago (hereinafter the "Sanitary District") without meeting reasonable terms and conditions, in-

cluding compensating the Sanitary District for the treatment of the excess waste water.

Plaintiffs sought to enjoin the Sanitary District, Corn Products (CPC International, Inc.) and Proctor and Gamble from dumping and treating waste in excess of 3,650,000 gallons per year unless and until the Sanitary District received compensation for treating such excess dumpage.

Subsequent to the filing of the complaint, the Sanitary District adopted a Surcharge Ordinance requiring payment for treatment of excess waste under certain specified circumstances. (Industrial Waste Surcharge Ordinance of The Metropolitan Sanitary District of Greater Chicago, adopted by The Board of Trustees on December 10, 1970; effective December 31, 1970.)

All parties to this appeal now concede that in view of the adoption of the Surcharge Ordinance the injunctive aspect of this appeal has been rendered moot and is not before this court.

In their complaint, plaintiffs also sought, on behalf of the Sanitary District, to recover from defendants Corn Products (CPC International, Inc.) and Proctor and Gamble (hereinafter "defendants") the Sanitary District's costs in treating the excess waste of defendants for five years (1965-1970).

Plaintiffs alleged that since the Sanitary District refused to assert this claim, plaintiffs were suing derivatively and as taxpayers seeking to restore to the general funds of the Sanitary District those monies expended by the Sanitary District in its treatment of defendants' excess waste.

Plaintiffs contend that defendants have been unjustly enriched through their alleged unlawful acts of dumping excess waste water into the Sanitary District's sewer system—all to the detriment of plaintiffs and other taxpayers, in that the cost of treating defendants' unlawful dumpage has resulted in less funds to expend on the Sanitary District's legitimate needs and a greater tax burden on the taxpayer, including plaintiffs, residing in the District.

Defendants filed motions to dismiss the complaint which were granted by the circuit court. Plaintiffs appeal.

Plaintiffs predicate their claim for compensation entirely upon Illinois Revised Statutes, 1969, ch. 42, par. 362a, which provides:

> "(a) It shall be unlawful, except as herein provided, for any person, firm, association or corporation in possession of or controlling and operating any industrial or manufacturing plant to discharge into the sewers or works of the Sanitary District or into any sewer connected therewith, any waste matter of any nature whatever

resulting from or the residue of any industrial or manufacturing operation or process carried on in such plant, where the mixture of such waste matter, sewage and water discharged by such industrial or manufacturing plant into such sewers or works equals in any twelve-month period an aggregate volume of three million, six hundred fifty thousand (3,650,000) gallons  *  *  *.

(b) The Sanitary District, in addition to the other powers vested in it, is hereby empowered in the interest of public health and safety, to permit the discharge into the sewers and works of the Sanitary District and into sewers connecting therewith from any industrial or manufacturing plant, a mixture of waste matter, sewage and water as described in paragraph (a) hereof, in excess of an aggregate volume of three million, six hundred fifty thousand (3,650,000) gallons in any twelve-month period, *upon reasonable terms and conditions, including a requirement for the payment of compensation to the Sanitary District* for the conveying, pumping, treatment and disposal of such excess.

(c) The Sanitary District is hereby *empowered to pass all necessary ordinances* to carry into effect the powers herein conferred, provided, however, *that in fixing the amount of compensation, if any* to be paid to the Sanitary District by applicants for permits to discharge a volume of said mixture of waste matter, sewage and water in excess of three million six hundred fifty thousand (3,650,000) gallons in any twelve-month period or in arriving at a determination of any other terms and conditions upon which such permits are to be issued, due and proper deductions shall be allowed for the amount of human sewage contained in such excess." (Emphasis supplied.)

It is undisputed that, at the time defendants allegedly discharged excess waste water, no Sanitary District ordinance under ch. 42, par. 326a was in effect. In fact, no such ordinance was passed by the Sanitary District during the entire period from 1935, when the statute was enacted, until December 1970. It is also undisputed that the Sanitary District permitted discharge of waste water by defendants in excess of 3,650,000 gallons annually not only during the five-year period to which this action applies, but for many additional years from 1935 until the passage of the Sanitary District's Industrial Waste Surcharge Ordinance in December 1970.

Plaintiffs' argument in support of their claim is that (1) defendants' alleged discharge of waste water in excess of 3,650,000 gallons annually into the Sanitary District system was "unlawful" under ch. 42, par. 326a,

Ill. Rev. Stat. (1969); and (2) that by making such "unlawful" excess discharge, defendants became liable to the Sanitary District, on a theory of "unjust enrichment" for the cost of its treatment.

However it is clear from a reading and analysis of the statute, that ch. 42, par. 326a (Ill. Rev. Stat. 1969, ch. 42, par. 326a), considered in its entirety, [sub-sections (a) (b) (c)] put the imposition of terms and conditions, including a requirement for payment of compensation, if any, within the discretion of the Sanitary District.

Plaintiffs concede in their argument that the Sanitary District had the discretion to pass or not to pass an ordinance dictating the terms of dumping excess sewage including the payment of compensation for the treatment of the excess. The decision not to pass that ordinance was within the discretion of the Sanitary District. They, however, argue that the result which flowed from the decision not to adopt an ordinance prior to 1970 was not within the discretion of the Sanitary District. Plaintiffs maintain that the Sanitary District is entitled to recover compensation for the treatment of the excess waste water on the basis of "unjust enrichment" for the period from 1965 to 1970. We disagree.

The Illinois Supreme Court in *Judge v. Bergman*, 258 Ill. 246, 251, 101 N.E. 574, 576, stated that:

> "The sanitary district [of Chicago] is a municipal corporation organized to secure, preserve and promote the public health. (*People v Nelson*, 133 Ill. 565.) It derives its powers from the legislature, and can exercise only those that have been expressly delegated to it and such as are necessarily implied. (*City of Chicago v. M. & M. Hotel Co.*, 248 Ill. 264.) Statutes granting powers to municipal corporations are strictly construed, and any fair and reasonable doubt as to the existence of the power is resolved against the municipality claiming the right to exercise it. *Seeger v. Mueller*, 133 Ill. 86."

The power to institute an action such as this to collect compensation for acts allegedly "unlawful" under the provisions of ch. 42, par. 326a cannot be "necessarily implied" from the language of the statute, since the statute, in subsections (b) and (c), gives the Sanitary District the power to determine and collect compensation by means of an ordinance. As stated by the Illinois Supreme Court in *City of Carlyle v. Nicolay*, 333 Ill. 562, 568, 165 N.E. 211, 214:

> "It is a general rule that when the legislature grants to a municipal corporation power to do any act and prescribes the manner in which the power shall be exercised, the power must be exercised in the manner stated in the grant and not otherwise."

If the legislature had contemplated that the Sanitary District could

bring an action such as this predicated upon "unjust enrichment" to recover the costs of treating excess waste water discharge, it would not have provided for the Sanitary District to recover such costs by means of an ordinance. It appears to have been the conclusion of the legislature that the determination of costs of treating excess waste water involved complex questions of fact and policy better left to the expertise of the Sanitary District than to the courts.

Plaintiffs argue that the legislature in ch. 42, par. 326a (Ill. Rev. Stat. 1969, ch. 42, par. 326a), "did not specify an exclusive remedy for unlawful discharges; in fact, no explicit remedy is stated at all as subsections (b) and (c) talk only of exemption."

Recently however, the Illinois Supreme Court had occasion to consider ch. 42, par. 326a in *Chicago Allis Mfg. Corp. et al., v. The Metropolitan Sanitary District of Greater Chicago*, 52 Ill.2d 320, 323, 288 N.E.2d 436, 438. The court in construing this statute stated:

> "Subsection (c) empowers the Sanitary District '* * * to pass all necessary ordinances to carry into effect the powers * * * conferred * * *.'"

Therefore, contrary to plaintiffs' contention that Subsection (c) is an exemption, it is clear that it prescribes the manner in which the Sanitary District's power is to be exercised; namely by the adoption of an ordinance. It is undisputed that no surcharge ordinance was adopted or in effect during the period of time for which the plaintiffs seek compensation from the defendants.

The circuit court was correct in holding that the passage of an ordinance by the Sanitary District was a condition precedent to its right to impose terms and conditions, including payment of compensation, for treatment of excess waste.

For the reasons expressed herein, the Sanitary District, absent an ordinance providing for compensation, lacked the right to seek compensation for the handling of excess discharge. As a necessary corollary, the taxpayer plaintiffs, suing derivatively on behalf of the Sanitary District, also lacked the right to seek compensation for any period prior to the passage of the Surcharge Ordinance by the Sanitary District in December 1970.

For these reasons the judgment order dismissing plaintiffs' complaint is affirmed.

Judgment affirmed.

GOLDBERG, P. J., and EGAN, J., concur.